CAPITOL LAND CO., INC. *v.* ZORN ET AL.

[No. 19,597. Filed July 26, 1962. Rehearing denied September 4, 1962. Transfer denied April 10, 1963.]

*James H. Pankow,* and *Jones, Obenchain, Johnson, Ford & Pankow,* of South Bend, *Frederick H. Link* and *Link & Link,* of LaPorte, for appellant.

*Clarence T. Sweeney,* of Michigan City, for appellees, Philip L. Zorn and Gertrude R. Zorn.

*George N. Beamer, James W. Oberfell,* and *Crumpacker, May, Beamer, Levy & Searer,* of South Bend, for appellees, Socony Mobil Oil Company, Inc., and Socony-Vacuum Oil Company, Inc.

MYERS, J.—This is an appeal from a declaratory judgment entered in the LaPorte Circuit Court wherein appellant was party plaintiff and appellees were named as parties defendant. The court made a determination of the rights and duties of the parties with respect to certain real estate located in LaPorte County, Indiana.

There was a stipulation of facts entered into by and between the parties, which may be summarized as follows:

Socony-Vacuum Oil Company, Inc. (later changed to Socony Mobil Oil Company, Inc., and hereinafter called Socony), entered into a formal lease agreement with appellees Zorns on November 14, 1952. The Zorns were the fee-simple owners of forty acres of land located at the northwest corner of U. S. Highway No. 20 and Indiana Highway No. 43. They leased to Socony a certain parcel of land, about 225 feet by 168 feet in the southeast corner of their forty acres, to be used as a gasoline station. The term of the lease was for a period of ten years beginning April 1, 1953. Rent was to be paid in the sum of $250 a month, with an additional gallonage rent of one cent for each gallon of gasoline in excess of 200,000 gallons delivered each one-year period into the storage tanks on the premises. The agreement contained the usual covenants concerning the payment of rent, taxes, insurance and public utility charges, the erection of improvements on the premises and rights of possession.

There were certain specific provisions in the lease which are pertinent to this lawsuit. Paragraph 6 refers to certain options to make renewals of the lease which were granted to Socony, and reads as follows:

"6. Lessor hereby grants Lessee options to make two (2) successive renewals of this lease of five (5) years each on the same terms and conditions, the first of such renewal periods to commence at the expiration of the original term. In order to exercise each successive option, Lessee shall give Lessor 90 days notice prior to the end of the then existing term or renewal, and on the giving of such notice the renewal shall be deemed effective without the necessity of any

further act or instrument. Lessor, however, covenants to execute upon request such instruments as Lessee may require by way of further assurance."

There was a stipulation that in the event Socony continued in possession of the premises after the expiration of the lease, or any extension or renewal thereof, without having renewed the same, or without having entered into a new lease, Socony was to be deemed thereafter a tenant from month to month, subject to all the terms and conditions set forth in the lease except as to the duration thereof.

Paragraph 8 of the lease granted to Socony a certain preemptive right to match an offer to purchase submitted by any third person, which reads as follows:

"8. As a part of the consideration hereof and without prejudice to the foregoing options Lessee at all times shall have the following pre-emptive right: Lessor shall not during the term of this lease or any renewal thereof sell, lease, grant options in respect of, or otherwise dispose of the whole or any part of said premises, any real property including the same or the whole or any part of Lessor's reversionary interest therein without giving Lessee a thirty (30) day option within which to purchase, lease or otherwise acquire the premises or any real property including the premises or such reversionary interest therein on the same terms and conditions as those in which Lessor is willing to make such sale, lease or other disposition to any other party, and Lessor shall promptly notify Lessee in writing of said terms and conditions and submit, in writing, any bona fide offer acceptable to Lessor which Lessor may have received. If Lessee elects to exercise said pre-emptive right it shall do so in writing within thirty (30) days after recept of notice of the terms and conditions and the closing shall take pace at Lessee's Chicago Office sixty (60) days subsequent to the exercise of said pre-emptive right, at which closing Lessor shall, in the

case of the conveyance of the fee, deliver to Lessee a good and valid full covenant warranty deed conveying a good and marketable title and a good and clear record title free and clear of all liens and encumbrances or, in the case of any lease or other disposition of said premises, any real property including the same or of Lessor's reversionary interest therein, deliver to Lessee an instrument in form and substance satisfactory to Lessee and sufficient to transfer to Lessee the interest proposed to be disposed of. Failure to exercise this right on one or more occasions shall not affect the right of this Lessee to exercise its pre-emptive right upon any occasion thereafter arising during the term of this lease or any renewal thereof."

On the 22nd day of January, 1960, appellant, Capitol Land Co., Inc., presented to the Zorns an offer in writing to purchase the entire forty acres for the sum of $250,000, payable over a period of ten years. It was expressly stated that the offer was subject to the preemptive right belonging to Socony by virtue of its lease. If Socony did not exercise its option, a Land Contract was to be drawn and executed between appellant and the Zorns within thirty days of the expiration date of the option. In that event, it was stated that the Zorns should retain for their own use and benefit all rents which were to be paid under the lease with Socony and all extensions or renewals thereof. However, it provided that if Socony exercised its option, the contract was to terminate and the earnest money in the amount of $10,000, which had accompanied the offer, was to be returned to appellant.

The Zorns accepted this offer, and, pursuant to the terms of their lease agreement, delivered a copy of it to Socony on January 27, 1960, together with a letter from their attorney stating that Socony was offered the opportunity of purchasing the entire tract upon

the same terms, price and conditions as contained in the offer.

On February 25, 1960, Socony wrote a letter to the Zorns in which it said that it elected to exercise the option on the terms and conditions of the offer. Omitting the formal parts, this letter reads as follows:

"Dear Mr. & Mrs. Zorn:

"On January 27, 1960, Clarence T. Sweeney, Esq., your attorney, delivered to us a letter giving us a thirty (30)-day option, in accordance with paragraph 8 of our lease with you dated November 14, 1952, to purchase the following described real estate of which the leased premises are a part:

"The Southeast Quarter (SE 1/4) of the Southeast Quarter (SE 1/4) of Section 5, Township 37 North, Range 4 West, in LaPorte County, Indiana, subject to abutting legal highways,

on the terms and conditions contained in said offer, which you have received from Capitol Land Co., Inc., dated January 22, 1960, and which offer you represent to be acceptable to you. This offer is a document of seven (7) pages, including a one-page Schedule, and a photostatic copy of this offer is annexed hereto and made a part hereof.

"In accordance with the provisions of our said lease, you are hereby notified that the undersigned elects to and hereby does exercise such option on the terms and conditions of the attached offer, including the time for closing and conveyance therein specified, which supersedes the time for closing stipulated in said paragraph 8 of our said Lease. Even though the conveyance contemplated by this exercise of option will constitute a merger of all interests in and to the leased premises in the undersigned, you are hereby assured that we are prepared to continue paying the rents reserved under the lease until April 30, 1963, which are all of the rents to be paid thereunder.

"We are enclosing our certified check for $10,000.00 as earnest money in accordance with the terms of the attached offer which you submitted.

"We would appreciate it if you would execute and return to us the enclosed duplicate copy of this letter.

"Very truly yours,
"Socony Mobil Oil Company, Inc.
(Formerly named Socony-Vacuum Oil Company, Inc.)"

A certified check for $10,000 was delivered as earnest money.

On March 11, 1960, the Zorns' attorney wrote a letter to appellant stating that Socony had elected to exercise its preemptive right, and returned the check for $10,000. The evidence reveals that thereafter representatives of appellant called upon officers of Socony in an effort to purchase Socony's interest. Their attempts were unsuccessful.

Appellant then filed a complaint for declaratory judgment in the LaPorte Circuit Court alleging that there was a case and controversy over the ownership of the forty acres. It asked that the rights of the parties in and to the real estate be determined by the court. Various answers and a cross-complaint were filed by appellees. The issues were closed, a stipulation of facts was entered into, and trial was held without the intervention of a jury. On July 21, 1960, the court found that Socony was entitled to purchase the real estate from the Zorns. Consistent judgment was entered in favor of Socony and against appellant. This appeal followed.

Appellant's motion for new trial is based upon grounds that the finding and decision of the court are not sustained by sufficient evidence; that the finding

and decision are contrary to law; that error of law occurred at the trial in that certain evidence offered by appellant was excluded because the court erroneously sustained objections of Socony to various questions and offers to prove made by appellant.

The first argument presented by appellant is that Socony failed to exercise its preemptive right because the letter of February 25, 1960, did not offer to purchase the real estate on the same terms and conditions as those presented by appellant's offer. It is contended that under the terms of the offer to purchase the Zorns would receive $30,000, plus excess gallonage, as rental for Socony's occupancy from 1963 to 1973, but that in accordance with Socony's letter of acceptance, the Zorns were to receive nothing for Socony's occupancy during this period.

Paragraph 6 in the Socony-Zorn lease agreement granted Socony the sole power to exercise the option to renew. It was under no duty or obligation to do so. There is no evidence from the writings involved herein or the testimony of witnesses that Socony intended to renew its lease after 1963, made any suggestion to that effect, or, in fact, did renew it beyond 1963. Mr. Zorn, when testifying on cross-examination, was asked this question and gave the following answer:

"Q. Now, you don't intend to imply that they [Socony] at this time gave you notice they intend to extend this lease five years beyond 1963?

"A. No, sir."

The effect of Socony's letter of February 25, 1960, was to notify the Zorns that Socony was going to exercise its preemptive right to purchase the property upon the same terms as contained in appellant's offer.

In order to do so, it necessarily had to promise not only that it would pay the total sum of $250,000 according to the terms expressed in the offer, but, in addition thereto, a sum equal to the balance of the rent payments due until 1963 when the ten-year term expired. At the same time, it clearly gave notice that it would pay no more sums equal to any renewals. If the lease agreement had remained in effect, this would have been advance notice that Socony did not intend to renew in 1963, which it had a right to declare.

Furthermore, the ultimate change in legal relationship between the Zorns and Socony as a result of Socony's action would have made it impossible for such an event to take place. When Socony exercised its option to purchase, the relation of landlord and tenant ceased and that of vendor and purchaser arose. The lease was extinguished and all its incidents were blotted out. 32 Am. Jur., Landlord and Tenant, §300, p. 280; 51 C. J. S., Landlord and Tenant, §82, p. 640.

If the Zorns had proceeded to make conveyance of the premises to Socony in fee-simple title according to their lease agreement, Socony's unexpired term of the leasehold would have become merged in the greater estate in the premises. As a result, Socony could not fill the character of both landlord and tenant in one and the same estate. *Liebschutz* v. *Moore et al.* (1880), 70 Ind. 142.

Appellant's offer to purchase clearly expressed knowledge of Socony's leasehold rights and the pre-emptive right to purchase thereunder. The offer was predicated on Socony's failure to exercise its pre-meptive right *and to remain on the premises as a tenant.* Appellant knew, or should have known, that

the legal effects of Socony's action would be to destroy the leasehold estate so as to make it impossible to renew part of it as a tenant.

Appellant argues the rule that merger will not be applied to defeat an intervening estate. *Abernathy* v. *McCoy* (1930), 91 Ind. App. 574, 154 N. E. 682. It declares that by virtue of the Zorns' acceptance of appellant's offer to purchase, the "reserved rentals" in the Zorn-Socony lease became a part of the consideration for the entire forty acres and were no longer a mere leasehold consideration; that the Zorns' rights to receive these rentals was as a vendor and not as a lessor, or as a vendor of the reversion in the leased premises; that these rentals thereby became an intermediary estate.

The flaw in this argument is that there were no reserved rentals in the Zorn-Socony lease agreement which would prevent merger when Socony exercised its option. "The lessor is not entitled to rent after the option to purchase is exercised unless there is an express stipulation therefor." 51 C. J. S., Landlord and Tenant, §82a, p. 640. The appellant-Zorn agreement provided for payment of the rentals to the Zorns only if Socony refused to exercise its option and remained in possession of its leased premises as a tenant. This may be construed as a proposed assignment of the rents and profits by appellant to the Zorns for the balance of the leasehold term. It was an additional consideration and an added incentive to the Zorns to sell their property to appellant. To meet appellant's offer, Socony likewise had to promise to pay this additional consideration. Although Socony's letter of February 25, 1960, used these words: ". . . we are prepared to continue paying the *rents reserved* under the lease until April

30, 1963, . . .'' (our emphasis), they can only be interpreted to mean that Socony would pay a sum equal to the rents payable under the lease agreement in addition to the sum of $250,000. In this way they matched appellant's offer. There was no intermediate estate ever in existence relating to rentals, since, under the provisions of the lease, the rentals from Socony were reserved only to the Zorns until such time as the option to purchase was exercised, when, as a matter of law, the rentals ceased. Accordingly, there was nothing to prohibit a merger of the estates.

We conclude that Socony's exercise of its option to purchase was on the same terms and conditions as those contained in appellant's offer to purchase.

Appellant agrues that, as the lease between the Zorns and Socony provides that it is binding upon their successors, appellant as "contract vendee" was entitled to notice from Socony of the exercise of its preemptive right, and that failure to give such notice to appellant was a violation of the lease agreement and defeats Socony's claim.

Appellant's offer to purchase was expressly made "subject to" Socony's preemptive right. Performance was conditioned upon the following happening: "If Socony shall not exercise an option to purchase." This performance was to consist of the execution of a "formal Land Contract" embodying final terms and conditions of the sale.

Appellees claim this offer and acceptance constituted a contract to make a contract contingent upon a condition precedent of the exercise or nonexercise of Socony's prior right. Appellant says this contract was subject to the happening of a condition subsequent which could terminate an estate already vested.

A condition precedent has been defined as a condition which must be performed before the agreement of the parties shall become a binding contract, or it may be a condition which must be fulfilled before the duty to perform an existing contract arises. 17 C. J. S., Contracts, §338, p. 792.

A condition subsequent is one which, if performed or violated, as the case may be, defeats the contract. 17 C. J. S., Contracts, §339, p. 795.

We think the appellant-Zorn contract was a valid, subsisting, executory contract, subject to both a condition precedent and a condition subsequent. Before there was a duty to perform on the part of either party, a period of time had to pass within which Socony took no action to exercise its pre-emptive right. This was the condition precedent. If during this period of time, Socony took such action, the contract was to terminate and the rights of both parties be dissolved. This was the condition subsequent.

Appellant could not have obtained any rights to the real estate as a "contract vendee" under these circumstances. Any interest it might have obtained as a "contract vendee" would have arisen only upon the happening of the condition precedent, that is, upon failure of Socony to exercise its rights. As this did not take place, appellant was not entitled to any notice, since the performance of the condition subsequent deprived it of any interest in the real estate whatsoever.

The next argument presented by appellant purports to deal with alleged error by the trial court in rejecting certain oral testimony offered by appellant at the

trial. This pertained to alleged conversations between Mr. Zorn and a representative of appellant at the time the offer to purchase was delivered to the Zorns. The offer to prove indicated such conversations would have shown that Zorn would have rejected an offer from appellant which did not reserve to him rents under the Socony lease. The objection which the court sustained was on the ground that such testimony violated the parol evidence rule.

The offer to purchase is very explicit, reserving the rents to the Zorns. The wording is as follows:

> "Purchaser agrees that in the formal contract which is to be entered into between Vendor and Purchaser there shall be incorporated among the terms and conditions thereof a clause providing that Vendor shall retain for his own use and benefit all of the rents which are to be paid under the aforedescribed lease with SOCONY-VACUUM OIL COMPANY, INC., and all extensions thereof. Vendee waives any and all of his right as Purchaser of the premises to any and all of said rental income. Purchaser further agrees that he will accept Title if, as, and when the same is to be delivered to him by Warranty Deed subject to the terms of the aforesaid lease and any renewals thereunder which are provided for under the terms thereof."

The rejected testimony in no way explained or interpreted the circumstances under which the written document was executed, or attempted to show the real consideration upon which it rested, or to identify the subject-matter and to give effect to the contract, so as to fall within the exception to the parol evidence rule. See *Ditchey* v. *Lee* (1906), 167 Ind. 267, 78 N. E. 972. The written agreement which resulted when the Zorns accepted the offer is unambiguous. No fraud or mistake is shown. Therefore, it will be conclusively assumed to be the final agree-

ment of the parties, and may not be varied or contradicted by evidence of conversations had or statements made at the time of or prior to the execution. *Schlosser* v. *Nicholson* (1916), 184 Ind. 283, 111 N. E. 13; *Sandage et al.* v. *The Studebaker Brothers Manufacturing Co.* (1895), 142 Ind. 148, 41 N. E. 380. Furthermore, we do not see how appellant could be harmed, since the terms of the agreement clearly embody what appellant attempted to put in evidence. The court did not err in excluding this testimony.

Appellant claims the court committed error in rejecting certain oral testimony of Mr. Zorn pertaining to the amount of money received by the Zorns each rental year from 1953 to and including 1959 under the excess-gallonage rental provision of the lease. It argues that this testimony was admissible to explain the terms in the lease and to indicate the intention of the parties in reserving the rentals, as the figures would have shown such reserved rentals constituted a substantial portion of the purchase price of the real estate. The objection which the court sustained was to the effect that such evidence was immaterial.

We cannot see that the amount of rental paid in past years has any bearing upon the issues involved. The offer to purchase reserved to the Zorns whatever gallonage rental was to be paid to Socony for the remainder of the leasehold period. Such evidence could only tend to show what might be expected to be received in the way of excess rental for that future period of time. There was no need to speculate on this as there was no question about it. It would continue to be figured each year until the lease terminated in 1963. As to what might be expected from 1963 to 1973 depended upon whether Socony re-

mained as a tenant, and, if so, whether it would renew its lease then. Such evidence is far too remote and specualtive to be material to the issues of this case. The court committed no error in sustaining objection to this evidence.

Incidental argument is made that the use of the word "prepared" in Socony's letter of acceptance dated February 25, 1960, does not show an intention to make a binding agreement, but only to further negotiate. Socony wrote as follows: ". . . we are prepared to continue paying the rents reserved under the lease until April 30, 1963, . . . ." The case of *Havens* v. *The American Fire Insurance Company of Philadelphia* (1894), 11 Ind. App. 315, 317, 39 N. E. 40, 41, is cited as authority. That case involved an alleged contract of employment after a series of correspondence. An agent offered to represent an insurance company in the State of Indiana for a salary of $1,800 per year plus expenses. The company finally wrote back, saying: "I . . . am prepared to make the arrangement with you for special work in Indiana, and on the terms you name . . . ." The company refused to employ him and he brought suit for breach of contract. The court held, after looking at the entire correspondence between the parties, consisting of many other letters, that the evidence showed the agent did not treat the contract as complete. Thus, the company's response was not deemed an unequivocal and unqualified acceptance, but rather a proposal to execute an agreement when the details were settled.

There is no such situation involved herein. Socony's letter was the only one written by it to the Zorns. Upon examining the contents in their entirety, it is clear that the letter was intended to be a notice of Socony's election to exercise its op-

tion to purchase in accordance with the terms and conditions of appellant's offer. The expression "we are prepared" can mean only "we shall" or "we promise" to continue to pay the rents when it is construed together with other provisions in the letter. There is nothing to indicate that Socony wanted to further negotiate or delay the exercise of its option.

Judgment affirmed.

Cooper, P. J., and Ax and Ryan, JJ., concur.

NOTE.—Reported in 184 N. E. 2d 152.