OMER K. BLAKLEY AND PATSY J. BLAKLEY *v.* ROBERT A. CURRENCE AND JOAN A. CURRENCE.

[No. 1-976A146. Filed April 20, 1977. Rehearing denied May 19, 1977.]

*John O. Worth, Clarkson and Worth,* of Rushville, *David W. Dennis, Dennis, Reinke & Vertesch,* of Richmond, for appellants.

*John L. Kellerman, Wycoff, Greeman & Kellerman,* of Batesville, for appellees.

ROBERTSON, C.J.—Omer and Patsy Blakley (appellants-defendants) appeal from a judgment of the Union County Circuit Court awarding Robert and Joan Currence (appellees-plaintiffs) damages in the amount of $21,310.20 for an alleged breach of a real estate sales contract.

We reverse and remand.

The record reveals that the Currences were the owners of a partially constructed house located in Liberty, Indiana.

On May 19, 1973, the Currences entered into a sales agreement with the Blakleys whereby the unfinished home would be sold to the Blakleys for $24,750.00. The contractual agreement provided that the sale was contingent upon the Blakley's acquiring loan approval for the payment of the purchase price. Specifically, the contract provided that the Blakley's would pay $8,000 in cash upon the delivery of a sufficient warranty deed with the remainder of the purchase price being "subject to loan approval".

In accordance with the terms of the contract, Mr. Blakley attempted to procure a mortgage loan. He contacted five financial institutions. Two of the lending institutions rejected his request for financing because the property was out of the county. Another institution refused his request because the home was still under construction. Blakley's current mortgagee agreed to finance the purchase, but would only give a fifteen-year loan. Blakley testified that he needed a longer term loan with lower payments. Finally, Blakley contacted the West End Building and Loan Co. and completed a loan application on May 25, 1973.

Robert Hines, president of the West End Co. preliminarily agreed to loan Blakley $47,000 upon the condition that Blakley would obtain a contract from a general contractor to complete construction on the Currence property. Blakley told Mr. Hines that he would attempt to secure such a contract and thereafter contacted a number of general contractors. The record indicates that Blakley was unable to get a contract for the completion of the house because the area contractors had construction backlogs. Failing to secure a completion contract, Blakley, having construction experience, decided to do his own work. He obtained figures from materialmen and arrived at an estimated completion cost. Blakley presented his figures to Mr. Hines on June 22, 1973, the day set for closing. Mr. Hines rejected Blakley's figures because they did not represent a contract with a building contractor. Mr.

Hines, therefore, informed the parties that he could not give final approval to Blakley's loan application. The parties then agreed to meet again on June 29, 1973, to close the deal. Blakely contacted two other general contractors who stated they could not finish the house at that time. Finally, Mrs. Ruth Taylor, the real estate agent, contacted B & M Industries in Connersville, Indiana. B & M Industries agreed to perform the construction work and submitted an estimate of the completion costs based upon Blakley's prior figures. The B & M figures were presented to Mr. Hines on June 25, 1973, but he rejected the estimate because it was a copy of Blakley's figures. Subsequently, Blakley informed the real estate agent that he could not complete the deal because he was unable to obtain the construction contract necessary for loan approval.

On July 6, 1973, the Currences initiated this action seeking specific performance of the contract. Subsequently, the Currences completed the home and sold it to another party. They thereafter amended their complaint and asked for damages in the amount of $21,310.20. Following a bench trial, judgment was entered against the Blakleys from which they now appeal.

At issue is whether the trial court could award damages for a breach of contract when a condition precedent to the contract had not been fulfilled. The Blakleys contend that the real estate sales contract never became enforceable because final loan approval was not obtained. The Currences agree that loan approval was a condition precedent to the contract, but argue that the contract was enforceable because the Blakleys failed to make a good faith effort to obtain loan approval.

A condition precedent has been defined as a condition which must be performed before the agreement of the parties shall become a binding contract, or it may be a condition which must be fulfilled before the duty to perform an existing contract arises. *Capitol Land Co.*

v. *Zorn* (1962), 134 Ind. App. 431, 184 N.E.2d 152. Neither party disputes the existence of a condition precedent to the contract in the case at bar. Whether the condition precedent was fulfilled is the question which we must answer.

The testimony adduced at trial clearly shows that the Blakleys did not receive final loan approval from the West End Building and Loan Co. On cross-examination Mr. Hines, president of West End, testified as follows:

"Q. Now Mr. Hines, I believe you testified something to the effect that the Blakleys applied for a loan, is that correct at your lending institution?

A. That's right.

Q. And what action was taken on that loan?

A. Uh, he applied for Forty-seven Thousand, and after processing the loan application, it was approved for Eighty per cent which was Forty-six Thousand, Eight Hundred, subject to us being furnished with a contractor.

Q. So, it was a conditional approval?

A. Right.

Q. It wasn't really approved?

A. Never had final approval.

Q. It never had final approval?

A. No."

Mr. Hines further stated that the reason final approval was not given was because Blakley failed to present a sufficient completion contract.

It is obvious that the Blakleys never acquired loan approval from a lending institution. It is equally as clear that the condition precedent was not technically fulfilled. It is urged by the Currences that while the condition precedent was not actually fulfilled, this Court should interpret the contract to

be enforceable because the Blakleys failed to affirmatively prove that they were unable to live up to the terms of the contract. In support of this contention, the Currences rely upon the case of *Smith* v. *Vernon* (1972), 6 Ill. App. 3d 434, 286 N.E.2d 99. In *Smith,* the parties entered into a real estate sales contract which provided that payment of the purchase price was "subject to purchasers *ability* to secure a first mortgage". (Our emphasis). The purchasers failed to obtain a first mortgage and brought suit to recover the earnest money deposit. The court determined that the purchasers could have obtained mortgage money if they had so desired and found that the purchasers were not entitled to recovery. In analyzing the terms of the contract, the *Smith* court stated that:

> ". . . As stated above, the clause read 'subject to purchasers ability to secure a first mortgage'. In our opinion the words 'ability to' are of special significance. If these words had been deleted from the contract, the clause would have read 'subject to purchasers securing a first mortgage'. In this event, it would be clear that the contingency clause could have only been satisfied by the actual procurement of a first mortgage. However, the inclusion of the word 'ability' operates, in our opinion, as a modification of any absolute requirement to secure a mortgage. Since the interpretation of the contract would be entirely different if the word 'ability' had been deleted the contract must be interpreted as if the word is intended as a modifier of the clause." *Smith* v. *Vernon,* 6 Ill. App. 3d at 437, 286 N.E.2d at 102.

The Currences ask us to interpret the conditional clause, "subject to loan approval", as if the word "ability" was included. This we can not do. The clause is specific and unambiguous, and we are not at liberty to modify the written terms of a contract. We are therefore compelled to find that the conditional clause, "subject to loan approval", required the existence of final loan approval before the Blakley's duty to perform attached. Since loan approval was not obtained, the agreement of the parties did not become a binding contract. Thus, the trial court erred in finding that the

Blakleys committed a breach. Accordingly, the judgment of the trial court is reversed, and this cause is remanded with directions to enter judgment in favor of defendants.

Reversed and remanded.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 361 N.E.2d 921.