**INDIANA STATE HIGHWAY COMMISSION, State of Indiana and Brown, Inc., Appellants–Defendants,**

v.

**Billy D. CURTIS and Virginia M. Curtis, Husband and Wife; and Carl Sutton and Lorraine Sutton, Husband and Wife, Appellees–Plaintiffs.**

No. 37A05–9711–CV–498.

Court of Appeals of Indiana.

May 11, 1998.

Jeffrey A. Modisett, Attorney General, A. Scott Chinn, Special Counsel to the Attorney General, Indianapolis, for Appellants–Defendants.

Gary K. Matthews, Enslen, Enslen & Matthews, Hammond, for Appellees–Plaintiffs.

**OPINION**

DARDEN, Judge.

*STATEMENT OF THE CASE*

The Indiana State Highway Commission and State of Indiana ("State") appeal the trial court's order on a motion to enforce a settlement agreement in the action filed by Carl and Lorraine Sutton against them. We affirm in part and reverse in part.

*ISSUES*

1. Whether the State is bound by the settlement agreement.

2. Whether the settlement agreement is supported by sufficient evidence.

3. Whether the trial court erred in awarding attorney fees to the Suttons for the fees incurred in enforcing the settlement agreement.

*FACTS*

The Suttons owned real estate adjoining State Road 10 in Jasper County on which they operated a business. In 1985, they granted the State an easement for highway drainage work to be performed. In 1988, the Suttons[1] sued the Indiana State Highway Commission, State of Indiana, and contractor Brown, Inc., alleging that this work had caused damage to and effected an involun-

---

1. Billy D. and Virginia M. Curtis were also plaintiffs in this action but have since been dismissed as parties.

tary taking of their commercial real property—by causing loss of business, damaging the building, destroying the septic system, interfering with vehicular access to the premises, and rendering useless the parking lot.

The State was represented by a number of deputy attorneys general and by a private attorney, Michael Blaize. After a number of pre-trial conferences, the trial court scheduled the matter for a four day jury trial to begin on Tuesday, January 21, 1997. In December of 1996, on the State's motion, a settlement conference was held. At the settlement conference, the two deputy attorneys general, Yasmin Lamberson and Brad Pippin, indicated that they lacked authority to agree to approve the replacement of the property's septic system and such approval would have to be given by the Indiana Department of Transportation.[2] No final agreement was reached.

Late in the afternoon of Friday, January 17, 1997, Blaize telephoned the Suttons' counsel, Gary Matthews, to indicate that he had the authority to settle the case on behalf of the State and Brown, Inc.[3] Blaize and Matthews agreed to an amount for a monetary settlement from the State and the State's grant of easements and other necessary approval for installation of a septic system for the Suttons' property. Matthews faxed a written agreement to Blaize; Blaize signed the last page and faxed it back to Matthews. The court was informed that settlement had been reached and vacated the trial set for two business days hence.

When the State failed to deliver the money within the agreed forty-five days or to act with respect to authorizing installation of a septic system, the Suttons filed a motion on June 17, 1996, to enforce the settlement

agreement. An affidavit from Matthews, detailing his discussions with Blaize and Blaize's reports of telephone calls to and approval from the deputy attorneys general, was attached. The trial court held a hearing on September 5, 1997, and Matthews reviewed how the settlement agreement was reached, as described in his affidavit. Blaize reported to the trial court that he had not kept detailed notes of his discussions with the deputy attorneys general but that his recollection was that the settlement was reached as described by Matthews. The State, represented by a new deputy attorney general who had no personal knowledge of what transpired on January 17th, told the court that he had talked with deputy attorneys general Lamberson and Pippen but that they "[could not] recall that the State, as the client, ever authorized the provision of an easement as part of the settlement agreement." (R. 119).[4]

The trial court found that the State's agreement to permit the installation and maintenance of a septic system for the Suttons' property was subject to the approval of the Indiana Department of Transportation (INDOT), and it had failed to reject the provision within a reasonable period of time. The court ordered the State to (1) pay the Suttons the agreed amount, (2) authorize the installation of a septic system for the property, and (3) pay $900 in attorney fees incurred on the enforcement action. The State appeals the latter two components of the trial court's order.

## DECISION

### 1. Authority to Settle Claim

The State first asserts that pursuant to Ind.Code § 34–4–16.5–13 and State v. Car-

2. The Department was established in 1990, replacing the Highway Commission. See Ind.Code 8–23–2–1; P.L. 112–1989.

3. As Brown, Inc. is not a party to this appeal, we will not discuss its obligation pursuant to the settlement reached.

4. In its brief, the State presents as fact that the "deputy attorneys general representing the State during the settlement discussions, Bradley D. Pippin and Yasmin B. Lamberson, testified by affidavit that easements and permits had not been a settlement term." State's Brief at 10.

First, these affidavits were not submitted to the trial court in response to the Suttons' motion to enforce the settlement agreement nor even at the time of the hearing thereon. Second, Lamberson's affidavit does not acknowledge her having spoken with Blaize on January 17th; Pippin's affidavit acknowledges talking with Blaize and avers that he did "not recall making any ... authorization or agreement" regarding authorization for a septic system. (R. 87). Third, both affidavits were not filed with the trial court until September 16, 1997, the day the trial court issued its ruling on the Sutton's motion.

*ter,* 658 N.E.2d 618, 622 (Ind.Ct.App.1995), only the governor may compromise claims on behalf of the State of Indiana, and "there is *no* evidence supporting the governor's approval of easement terms." State's Brief at 12.[5]

The statutory provision, part of the Indiana Tort Claims Act, reads as follows:

> Except as provided in section 18 of this chapter, the governor may compromise or settle a claim or suit brought against the state or its employees.

I.C. § 34–4–16.5–13. Apparently the only time this provision has been cited since its enactment in 1974 was in *Carter.* Carter filed a negligence claim against the state after she fell in a license branch office. The issue on appeal was whether the trial court erred in sanctioning the State for failure to act in good faith pursuant to Alternative Dispute Resolution Rules. 658 N.E.2d at 621. In response to the State's argument that there was insufficient evidence for the trial court to conclude that the State acted in bad faith, Carter argued "that the A.D.R. rules require a person with settlement authority to be present during mediation," and only a deputy attorney general was present at mediation sessions. We said,

> By statute, the governor is the sole authority to bind the State in a legal settlement. Ind.Code § 34–4–16.5–13. He is, therefore, the only State official having any settlement authority.

658 N.E.2d at 622. We proceeded, however, to hold that actions of an authorized deputy attorney general are "acceptable" to compromise and settle a claim on behalf of the State. *Id.* Consequently, the above quotation from *Carter* may be *dicta.* Moreover, *Carter* does not consider the question of authority to encumber real property in the compromise and settlement of a claim against the State. Therefore, *Carter* and the statutory provision it cites do not require reversal of the trial court's order in this case.

In further argument that only the governor can authorize a settlement, the State contends that enforcing the settlement "would raise serious constitutional questions" and "jeopardize Indiana's vigorous separation-of-powers doctrine." State's Brief at 15. However, the premise underlying this argument is that I.C. § 34–4–16.5–13 vests in the governor "exclusively the discretion to compromise claims in which State funds and real property are at issue." *Id.* According to the State, the trial court has improperly ordered the executive branch to act in a particular manner.

The appeal before us concerns only the real property component of the settlement. As noted by the trial court, the settlement provided that the State's permission for installation of a septic system was subject to approval by INDOT. INDOT is responsible for the maintenance of state highways and drainage work associated therewith. Ind. Code § 8–23–2–4.1(4)(A) and § 8–23–9–51. INDOT holds statutory authority (1) to "encumber property to carry out its responsibilities;" (2) to compromise any claims "with the approval of the attorney general;" and (3) to "execute all documents and instruments necessary to carry out its responsibilities." Ind. Code § 8–23–2–6(a)(1), (4), and (8).

The instant claim involved effects on the Suttons' real property resulting from INDOT carrying out its responsibilities with respect to state highway drainage work. Evidence before the trial court indicated that Blaize had been authorized by the deputy attorneys general to agree to a settlement which would require INDOT to provide the necessary permission for installation of a septic system. By statute, INDOT is empowered to execute instruments to encumber real property in settling, with the approval of the Attorney General's office, a claim arising from its performance of highway drainage work. In other words, INDOT was empowered to perform those acts contemplated by the settlement agreement. Accordingly, the trial court simply ordered the State to act as it had agreed to do.

### 2. *Sufficiency*

Next, the State claims insufficient evidence supports the trial court's conclusion that the agreement was enforceable.

---

**5.** Apparently the governor did at some point approve the monetary component of the settlement.

■ The judicial policy of Indiana strongly favors settlement agreements. *Klebes v. Forest Lake Corp.*, 607 N.E.2d 978, 982 (Ind.Ct.App.1993). If a party agrees to settle a pending action but then refuses to consummate the settlement agreement, the opposing party may obtain a judgment enforcing the agreement from the court before which the action is pending. *Id.* A challenge to the trial court's enforcement of a settlement agreement is reviewed for sufficiency of the evidence. *Id.*

■ First, the State argues that INDOT's approval was "a condition precedent to the State's binding obligation under the agreement." State's Brief at 17. However, it fails to support this contention with legal argument. A condition precedent does not destroy mutuality of an agreement. *Donavan v. Ivy Knoll Apts.*, 537 N.E.2d 47, 54 (Ind.Ct.App.1989). Moreover, the rule in Indiana is that a party may not rely on the failure of a condition precedent to excuse performance where that party's inaction caused the condition to be unfulfilled. *Hamlin v. Steward*, 622 N.E.2d 535, 540 (Ind.Ct. App.1993). Finally, a condition precedent may be waived. *Powers v. City of Lafayette*, 622 N.E.2d 1311, 1314 (Ind.Ct.App.1993). The settlement agreement was reached on January 17, 1997, less than two business days before trial. Six months later, INDOT had failed to act (or to convey any intention of acting) to approve the installation of a septic system for the Suttons' property. The trial court found that had INDOT rejected the settlement agreement within a reasonable period of time, it would have held the agreement unenforceable. Hence, even if obtaining INDOT approval was a condition precedent, the State waived it by not acting promptly thereon. Sufficient evidence supports the trial court's conclusion that the agreement was enforceable given the State's failure to specifically reject it.

The State next claims that "the settlement language is too vague to indicate a meeting of the minds concerning the easements and permits." State's Brief at 17. The provisions regarding the septic system read as follows:

3. Defendant, State of Indiana, shall authorize and approve the installation of the mound septic system designed by Ernest Munter, P.E. for the use and benefit of the Hornets Nest Restaurant and Lounge in DeMotte, Indiana, or such other septic system as may be approved by the authority having jurisdiction over said business and real estate upon which it is located.

4. Defendant, State of Indiana, shall permit, by appropriate easements and agreements, the boring under State Road 10 or any other State owned road in its jurisdiction for the purpose of installing and maintaining the approved septic system for the use and benefit of Plaintiffs' said real estate and business property.

5. Defendant, State of Indiana, shall permit, by appropriate easements and agreements, access to the real estate upon which the approved septic system shall be installed for the purpose of installation, maintenance, repair and replacement of said system, said access to include but not be limited to permission to remove a portion of the guardrail on State Road 10 at or near the location shown on the Munter design plans dated February 14, 1993 and revised August 15, 1994 where "sleeve for forced main" is shown thereon.

(R. 64–65).

The trial court found that during the January 17th negotiations, Matthews was advised that INDOT had to approve the final location for an easement across State Road 10. Thus, any lack of specificity in the agreement about the exact location of the easements seems to have been at the direct request of the State. Sufficient evidence about the easements and permission which the State agreed to provide supports the trial court's conclusion that the settlement is enforceable.

On the facts before us, we find the principles expressed by our supreme court in *State v. Feigel*, 204 Ind. 438, 178 N.E. 435, 438 (1931) to be particularly apt. Addressing the State's arguments as to why it should not be found liable, the court there held as follows:.

It seems to be well settled that the state in all its contracts and dealing must be adjudged and abide by the rules which govern in determining the right of private

citizens contracting and dealing with each other. There is not one law for the state and another for its subjects.

Sufficient evidence was before the trial court to support its conclusion that the State should be ordered to provide the easements and permission contemplated in the settlement agreement.

3. *Attorney Fees*

The State's final claim is that the award of attorney fees cannot be sustained. We agree.

The trial court awarded the Suttons attorney fees of $900 for the cost of bringing the enforcement action because the State "failed to comply with the terms of their agreement without excuse or justification." (R. 96). As we discussed extensively in *Carter*, the State is not liable for a punitive award of attorney fees as a matter of public policy because "the State does not have a mind that can be deterred by an award of punitive damages," and "it is the citizen taxpayers who would bear the burden of this punitive award if assessed against the State." 658 N.E.2d at 624. Therefore, we reverse the award of attorney fees.

STATON and GARRARD, JJ., concur.