**INDIANA STATE HIGHWAY COMMIS-SION, State of Indiana, and Brown, Inc., Appellants (Defendants below),**

v.

**Billy D. CURTIS and Virginia M. Curtis, Husband and Wife; and Carl Sutton and Lorraine Sutton, Husband and Wife, Appellees (Plaintiffs below).**

No. 37S05–9810–CV–557.

Supreme Court of Indiana.

Dec. 18, 1998.

Jeffrey A. Modisett, Attorney General, A. Scott Chinn, Jon Laramore, Indianapolis, for Appellants.

Gary K. Matthews, Hammond, for Appellees.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case holds that a settlement agreement that explicitly requires approval by the Indiana Department of Transportation is not enforceable against the State without that approval.

### Factual and Procedural Background

In 1985, Carl and Lorraine Sutton[1] granted the State of Indiana an easement onto their commercial property to complete highway drainage work along State Road 10 in Jasper County. In 1988, the Suttons sued the State of Indiana, the Highway Commission[2] and the State's contractor, Brown, Inc., alleging that the drainage work had destroyed their septic system and caused loss of business by restricting access to their property and rendering their parking lot useless. The State was represented by several deputy attorneys general and also by a pri-

---

1. Billy and Virginia Curtis, the previous landowners, were also named as plaintiffs in the lawsuit, but the Suttons appear to be the parties principally and perhaps solely interested at this point.

2. The Highway Commission was replaced by the Indiana Department of Transportation which was established in 1990. See Pub.L. No. 112–1989, § 5, 1989 Acts 1140–47.

vate attorney, Michael Blaize, over the several years of the litigation.

In January, 1997, four days prior to the scheduled trial, Blaize contacted the Suttons' attorney, Gary Matthews, to discuss settlement. Although Blaize indicated that he had authority to discuss a settlement, he advised Matthews that a monetary settlement required approval by the Governor, and that any easement over State property to deal with the septic tank required approval by the Indiana Department of Transportation ("INDOT"). Blaize was in communication with a deputy attorney general during the settlement discussions. The deputy observed that a monetary settlement required the Governor's approval, but also stated that she had no reason to believe that the Governor would not approve the settlement. This information was relayed to Matthews. Ultimately, Blaize and Matthews arrived at an agreed amount for a monetary settlement from the State and the State's grant of an easement onto State property to install a new septic system. The two also agreed that the monetary settlement would be paid within forty-five days.

On the same day as the negotiation, Matthews reduced the agreement to writing and faxed it to Blaize who signed and returned it via fax. Paragraph five of the agreement granted the Suttons access over State property. Paragraph seven provided: "access through State Road 10's existing guardrail and any driveway therefrom as described in paragraph five (5) of this agreement is subject to approval by INDOT." The parties then informed the trial court that a settlement had been reached, apparently without mentioning the conditions in the agreement.

Forty-five days after the agreement was signed by Matthews and Blaize, the Suttons filed a motion to enforce the settlement agreement. At that time, the State had neither made the monetary payment nor provided the easement and neither the Governor nor INDOT had given approval to the agreement. After a hearing in September, 1997, the trial court found that the "parties entered into a binding settlement agreement" and granted the Plaintiffs' motion to enforce the settlement. The trial court ordered the State to pay the settlement, permit the easement for the septic system and pay attorney's fees to Plaintiffs.

The State appealed, arguing that (1) the trial court erred by finding that a lawyer representing the State could bind the State as to the easements; (2) the agreement was insufficiently precise to establish a binding agreement; and (3) the award of attorney's fees was error. Because the monetary award had been approved by the Governor between the time of the trial and appeal, only the requirement of approval of the easement was before the Court of Appeals. The Court of Appeals (1) affirmed the trial court's enforcement of the agreement; (2) found sufficient evidence to demonstrate an agreement was reached; and (3) reversed the award of attorney's fees. *Indiana State Highway Comm'n v. Curtis*, 695 N.E.2d 143 (Ind.Ct. App.1998). We granted the State's petition to transfer.

The State presents two issues on transfer that we restate as:

(1) Is a settlement agreement that explicitly requires the approval of a component of a party binding on the party without that approval?

(2) Can attorneys representing the State bind the State to a settlement of a tort claim not authorized by the Governor?

## Standard of Review

■ The trial court made findings of fact pursuant to Indiana Trial Rule 52. These will not be set aside unless clearly erroneous. Ind. Trial Rule 52(A). The findings are clearly erroneous only when a review of the record leaves the appellate court firmly convinced a mistake has been made. *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994); *see also State v. Van Cleave*, 674 N.E.2d 1293, 1295 (Ind.1996), *cert. denied* — U.S. —, 118 S.Ct. 1060, 140 L.Ed.2d 121 (1998). We disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Chidester*, 631 N.E.2d at 910; *see also Indianapolis Convention & Visitors Ass'n, Inc. v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208, 211–12 (Ind.1991).

### Enforceability of the Settlement Agreement

The State argues that the agreement is not binding on the State because only the Governor can settle a claim on behalf of the State. The Plaintiffs contend that the easement agreement is enforceable without approval by the Governor or INDOT because Blaize and the deputy attorneys general had the authority to bind their client, the State. Resolution of these issues turns on both the authority of the State's private attorney and the deputies to bind the State, and also the terms of the agreement. In brief we hold that (1) the State, like any other party, may include enforceable conditions precedent in a settlement agreement that, if not met, render obligations not binding and (2) the Governor's approval is required to compromise a tort claim against the State.

### A. *Approval by INDOT is an Enforceable Condition*

The trial court made several findings bearing on the requirement of INDOT approval. The trial court found that "the parties' settlement agreement does make said agreement subject to the approval of the Governor and the Indiana Department of Transportation." The trial court also made several other findings regarding the communication between the attorneys and the assurances made regarding the availability of approval by the Governor and INDOT. The record is replete with evidence supporting these findings, including affidavits of the attorneys who took part in the settlement discussions. There is no finding by the trial court and no evidence in the record that INDOT ever approved the easement provision of the agreement. Apart from the expiration of the forty-five day period without any further action, there is no fact found that bears on waiver of the condition or estoppel preventing the State from asserting that requirement.

The trial court found that "the Defendants had a reasonable time for the Governor to accept or reject said settlement" and that the court was "left without any information as to whether or not the parties' settlement agreement was ever presented to the Governor, and if so, whether or not the Governor has accepted or rejected the same." By this, the trial court apparently found that the State's delay in providing information about approval constituted a waiver of the condition by the State.

The trial court also found that the "parties entered into a binding settlement agreement, and that the Plaintiffs' Motion to Enforce the Settlement should be granted." This is a conclusion of law. We conclude that because the terms of the agreement required INDOT's approval of the easement provisions, and there is no evidence in the record and no finding by the trial court to indicate that approval was given or waived, the conclusion that the agreement is enforceable is erroneous as a matter of contract law.

■ Construction of settlement agreements is governed by contract law. 5 I.L.E. *Compromise & Settlement* § 21 (1958). Under contract law, a condition precedent is a condition that must be performed before the agreement of the parties becomes a binding contract or that must be fulfilled before the duty to perform a specific obligation arises. *Blakley v. Currence,* 172 Ind.App. 668, 670, 361 N.E.2d 921, 922 (1977); *Capitol Land Co., Inc. v. Zorn,* 134 Ind.App. 431, 443, 184 N.E.2d 152, 158 (1962); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 224 (1981) (a condition is an event that must occur before performance under a contract becomes due); 5 WILLISTON, CONTRACTS § 666 (3rd ed. 1961) (a condition precedent may be either a condition to the existence of a contract or to an immediate obligation under a contract); *accord* 17A C.J.S. *Contracts* § 338 (1963). INDOT's approval of the easement provisions is a condition of the settlement agreement. The condition was supplied by the parties when they agreed explicitly in the settlement document that the easement provisions required INDOT's approval.

■ As a general rule, an express condition must be fulfilled or no liability can arise on the promise that the condition qualifies. 5 WILLISTON, CONTRACTS § 675 (3rd ed. 1961); RESTATEMENT (SECOND) OF CONTRACTS § 225 (1981) (if a condition does not occur, performance of a duty subject to a condition cannot become due and if the condition can no longer occur, the duty is discharged). Indiana courts have consistently recognized this rule. The Court of Appeals held in *Blakley* that an

agreement containing the clause "subject to loan approval" did not become a binding contract because approval was not obtained. 361 N.E.2d at 923. Similarly, in *Wetzel v. Andrews,* 136 Ind.App. 117, 198 N.E.2d 19 (1964), the Court of Appeals held that a lease was not valid where the condition precedent of statutorily required approval by the governmental entity was not met. Performance of a condition may be excused by waiver. However, the waiver must be the "voluntary and intentional relinquishment of a known right." 6 WILLISTON, CONTRACTS § 678 (3rd ed. 1961); *accord Northern Indiana Commuter Transp. Dist. v. Chicago SouthShore,* 685 N.E.2d 680 (Ind.1997) (waiver of contractual right requires intentional relinquishment of known right).

■■■ The trial court found that "it is not equitable for the State to settle a case upon certain agreements ... and then some eight months later repudiate the agreement." Failure to gain a required approval is not repudiation of an agreement. Rather it is insistence on compliance with the terms of the agreement. "The mere fact that a promise or condition is somewhat harsh or unfair in its operation is not enough to furnish such an excuse." 5 WILLISTON, CONTRACTS § 769 (3rd ed. 1961). A condition may be excused if the requirement "will involve extreme forfeiture or penalty and its existence or occurrence forms no essential part of the exchange for the promisor's performance." *Id.* at n. 2 (quoting RESTATEMENT OF CONTRACTS § 302 (1932)). Because the condition—approval by the Governor and INDOT—is an essential part of the exchange and there is no evidence of extreme forfeiture or penalty the condition in this case is not excused. There are obvious public safety concerns involved in the granting of an easement that affects a safety rail on a public highway. It is quite reasonable that the contract required that INDOT approve such an arrangement, and that it be quite specific as to where and when and how rights under the easement are to be exercised.

■■■ The Court of Appeals, citing *Hamlin v. Steward,* 622 N.E.2d 535, 540 (Ind.Ct.App.1993), noted the doctrine that a party may not rely on a failure of a condition precedent where that party's inaction caused the failure. *Indiana State Highway*

*Comm'n v. Curtis,* 695 N.E.2d 143, 147 (Ind. Ct.App.1998). This does not mean that every failure of a condition results in an estoppel against asserting the condition as a proper reason to avoid the contract. Rather, as the court in *Hamlin* went on to explain, the parties "have an implied obligation to make a reasonable and good faith effort to satisfy the condition." *Hamlin,* 622 N.E.2d at 540. "Causing" the failure of a condition means more than the mere rejection of the contract for sound reason or for newly discovered information, if the right to do that is preserved in the contract. The *Hamlin* doctrine prevents a party from acts of contractual sabotage or other acts in bad faith by a party that cause the failure of a condition. Where the condition is itself the approval by some division or component of the party, however, the obligation is only to consider that approval in good faith. The mere passage of time does not create an inference of bad faith, and there is no other evidence that the State or its representatives did not act in good faith to evaluate the approval. Accordingly, the condition is available to the State as a bar to its obligations. The requirement of approval is for the benefit of the State, and the requirement that approval be obtained within forty-five days is for the benefit of the Suttons. The passage of the time specified in the agreement gives the Suttons the right to revive their lawsuit, but it does not create an enforceable settlement. *Cf. Barrington Management Co., Inc. v. Paul E. Draper Family Ltd.,* 695 N.E.2d 135, 141–42 (Ind.Ct. App.1998).

Finally, even in non-public contracts, it is not uncommon for a settlement agreement to require approval by some agency or organization such as a party's board of directors or to require study that cannot be accomplished in the time frame available on the courthouse steps. This may be because the agreement calls for an authority not previously given to the negotiator, because some aspect of the proposed settlement involves technical or other expertise not immediately available, or for other good reasons. Most of these approvals are given in due course. But upholding the right of a party to insist on such a condition ultimately facilitates settlement by permitting an agreement to be made with an

enforceable condition, even if the condition is likely to be fulfilled. Accordingly, as a matter of contract law, because INDOT approval was required by the settlement agreement, and that approval was not obtained, the agreement, as to the easement provisions, is not enforceable.

### B. *The Governor's Approval is Required by Statute*

We also agree with the State that the Governor's approval is required for any compromise of a claim against the State. The Court of Appeals observed that as a general proposition there is not one law for the State and another for its subjects. *Curtis*, 695 N.E.2d at 148 (quoting *State v. Feigel*, 204 Ind. 438, 445, 178 N.E. 435, 437 (1931)). This statement, although generally true, is not entirely correct. Specifically, in the area of tort claims we do have a separate body of law—the Tort Claims Act—that is applicable only to claims against governmental entities. One feature of this statute is its requirement that "the governor may compromise" suits. IND.CODE § 34-13-3-14 (1998). As the Court of Appeals held in *State v. Carter*, this means only the Governor has ultimate authority to compromise a claim. 658 N.E.2d 618, 622 (Ind.Ct.App.1995). Presumably the reason for this requirement is to focus responsibility and accountability and avoid negligent or intentional waste of public assets. Whatever its objective, the legislature is free to change that requirement, but unless and until this occurs, the Governor's approval is required before the State can compromise a tort claim.

### Conclusion

The trial court's order enforcing the settlement agreement as to the easement provisions is reversed. The Court of Appeals decision with regard to attorney's fees is summarily affirmed. Ind. Appellate Rule 11(B)(3).

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.