## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 03 2020, 8:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert R. Faulkner
Evansville, Indiana

ATTORNEY FOR APPELLEE

Max E. Fiester
Terrell, Baugh, Salmon & Born, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew P. Apodaca, *Appellant-Defendant,* v. ERA First Advantage Realty, Inc., *Appellee-Plaintiff.* | December 3, 2020 |
| | Court of Appeals Case No. 20A-SC-505 |
| | Appeal from the Warrick Superior Court |
| | The Honorable Benjamin R. Aylsworth, Magistrate |
| | Trial Court Cause No. 87D02-1907-SC-1365 |

**Kirsch, Judge.**

[1] Matthew P. Apodaca ("Apodaca") appeals the trial court's ruling that Apodaca owes a real estate sale commission to ERA First Advantage Realty, Inc. ("ERA

Realty") for a purchase of residential real estate that Apodaca negotiated and closed on his own. On appeal, Apodaca raises three issues, but we reach only one of those issues, which we restate as follows: whether the trial court erred in ruling that Apodaca was required to pay a commission to ERA Realty and its agent because ERA Realty and its agent failed to fulfill conditions precedent under the contract.

We reverse and remand.

## Facts and Procedural History

In early 2019, Apodaca lived in California, and his job as a field engineer for Siemens Corporation involved significant travel. *Tr. Vol. 2* at 25. He searched the internet for real estate for investment purposes, but once he learned that housing in Indiana was much cheaper than housing in California, he began to look for homes in Warrick County as a potential home for him and his fiancée so he could travel less, and he and his fiancé could settle down and start a family. *Id*. at 26-27. At some point "before March" of 2019, Apodaca discovered a residence in Elberfeld, Indiana ("the Elberfeld residence") that was listed as "for sale by owner property." *Id*. at 27. Apodaca contacted the owner of the Elberfeld residence. *Id*. At this point, Apodaca had not reached out to any southwestern Indiana realtors about the Elberfeld residence. *Id*.

On March 6 or 7, 2019, Apodaca contacted Michael Melton ("Melton"), a real estate agent for ERA Realty. *Id*. at 6. Beginning on March 7, 2019, Apodaca began sending text messages to Melton about properties that Apodaca wanted

to view. *Ex. Vol.* at 3-6. In none of his communications with Melton did Apodaca ask Melton about the Elberfeld residence. *Tr. Vol. 2* at 19; *Ex. Vol.* 3 at 3-6. At some point before March 16, 2019, Apodaca contacted the owner of the Elberfeld residence, and the owner agreed that Apodaca could come view the residence on March 16, 2019, at 3:00 p.m. *Tr. Vol. 2* at 28.

[5] Apodaca and Melton met for the first time on the morning of March 16, 2019, so they could view several properties in the area later that day. *Id.* at 10. Melton presented Apodaca with a contract. *Id.* at 11, 20, 22. Several hours after Apodaca and Melton started looking at properties, Apodaca told Melton for the first time that he had arranged to view the Elberfeld residence on his own. *Id.* at 21. Apodaca and his fiancée viewed that property on their own at 3:00 p.m. the same day. *Id.* at 21, 28, 30.

[6] At some point on March 16, 2019, Apodaca signed a contract with ERA Realty. *Id.* at 11. In pertinent parts, the contract, designated as a "Loyalty Agreement – Buyer's Exclusive Agency Contract", provided as follows:

> This Contract is entered into and shall commence on 3/16/19 by [ERA Realty] and [Apodaca] . . . . [Apodaca] employs [ERA Realty] for the purpose of exclusively assisting [Apodaca] to locate property described below or other property acceptable to [Apodaca], and to negotiate terms and conditions acceptable to [Apodaca] for purchase of property.
>
> . . . .
>
> C. [ERA REALTY'S] COMPENSATION:

. . . .

2 . Commission:  In consideration for the services to be performed by [ERA Realty], [Apodaca] also agrees to pay [ERA Realty] a commission of $ Paid by Seller or Paid by Seller % of the total purchase price; however, the total  commission paid to [ERA Realty] shall not be less than $ Paid by Seller.  . . .  *[ERA Realty] shall use [ERA Realty's] best effort to cause the seller or the seller's agent to satisfy [Apodaca's] obligation to [ERA Realty].*

The commission shall be due, earned and promptly paid if:

a.  [Apodaca or any other person acting for [Apodaca] or on [Apodaca's] behalf, acquires any real property or interest as described herein during the term of this Contract through the services of [ERA Realty] or otherwise.

. . . .

F. FURTHER CONDITIONS:

*[Apodaca] will compensate [ERA Realty] 3% on the purchase price of a for sale by owner if the seller will not pay [Apodaca's] agent commission.* [Apodaca] will call [Melton] prior to scheduling appointments with for sale by owners and let [Melton] schedule the appointments.

*Appellant's App. Vol. 2* at 18-19 (emphasis added).

[7]     Apodaca negotiated the terms of the purchase of the Elberfeld residence on his own and closed the sale himself.  *Tr. Vol. 2* at 30.  Melton had no role in the sale.  *Id*. at 21.  At some point before May 20, 2019, Apodaca purchased the

Elberfeld residence for $450.000. *Id*. at 15-16, 21, 30; *Appellant's App. Vol. 2* at 17; *Ex. Vol. 3* at 6. Melton did not receive a commission from Apodaca, which under the terms of the contract would have been $13,500.00. *Tr. Vol. 2* at 16-17. There was no evidence that Melton, or anyone else on behalf of ERA Realty, ever attempted to collect any commission from the seller of the Elberfeld residence or that the seller refused to pay the commission.

[8] On July 17, 2019, ERA Realty sued Apodaca by filing a "Statement of Claim." *Appellant's App. Vol. 2* at 10. Even though ERA Realty alleged damages for lost commissions of $13,500.00, it agreed to the jurisdictional limit of $6,000.00 by filing the claim in the Small Claims Division of Warrick Superior Court. *Id*. On January 30, 2020, the trial court conducted a hearing on ERA Realty's claim. *Tr. Vol. 2* at 2. On February 3, 2020, the trial court entered judgment against Apodaca, finding and concluding as follows:

> The Court FINDS that the contract executed by . . . [Melton] and [Apodaca] on the morning of March 16, 2019 is valid and enforceable. [Melton] had performed work in preparation prior to that date for [Apodaca's] benefit and [Apodaca] testified about thoughtful discussion and consideration with his spouse prior to ultimately deciding to enter into the binding contractual agreement and without being subject to duress. As a result of the foregoing reasons, the Court ORDERS that the Plaintiff shall possess a Judgment against [Apodaca] in the full amount being requested, $6,000.00, plus court costs.

*Appellant's App. Vol. 2* at 8. Apodaca now appeals.

# Discussion and Decision

Apodaca argues that the trial court erred in finding that he was liable under the contract to pay a commission to Melton because he maintains that Melton was entitled to a commission under the contract only if Melton fulfilled conditions precedent in the contract. In addressing Apodaca's claim, we will assume without deciding that Apodaca would owe Melton the commission if Melton fulfilled the conditions precedent in the contract.

When a trial court enters findings of fact and conclusions of law, findings control only as to the issues they cover, and a general judgment standard controls as to issues upon which there were no findings. *Jernas v. Gumz*, 53 N.E.3d 434, 443 (Ind. Ct. App. 2016), *trans. denied*. A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id*. We review facts from a bench trial under the clearly erroneous standard and thus defer to the trial court's opportunity to assess witness credibility. *Branham v. Varble*, 952 N.E.2d 744, 746 (Ind. 2011). This deference is "particularly important in small claims actions, where trials are informal, 'with the sole objective of dispensing speedy justice' between parties according to the rules of substantive law." *Id.* (quoting *City of Dunkirk Water & Sewage Dep't v. Hall,* 657 N.E.2d 115, 116 (Ind. 1995)). "Interpretation of a contract presents a question of law." *Jernas*, 53 N.E.3d at 443. "We review questions of law *de novo* and owe no deference to the trial court's legal conclusions." *Id*.

[11]     In arguing the contract required Melton to fulfill conditions precedent before being entitled to a commission, Apodaca points to section C2 and section F of the contract. In pertinent part, section C2 provides:

> Commission: In consideration for the services to be performed by [ERA Realty], [Apodaca] also agrees to pay [ERA Realty] a commission of $ Paid by Seller or Paid by Seller % of the total purchase price; however, the total commission paid to [ERA Realty] shall not be less than $ Paid by Seller. . . . *[ERA Realty] shall use [ERA Realty's] best effort to cause the seller or the seller's agent to satisfy [Apodaca's] obligation to [ERA Realty]*.

*Appellant's App. Vol. 2* at 18 (emphasis added). Section F provides:

> *[Apodaca] will compensate ERA Realty 3% on the purchase price of a for sale by owner **if the seller will not pay [Apodaca's] agent commission***. [Apodaca] will call [Melton] prior to scheduling appointments with for sale by owners and let [Melton] schedule the appointments.

*Id*. at 19 (emphasis added).

[12]     Apodaca contends that there was no evidence before the trial court that Melton made any effort to cause the seller to pay any obligation for a commission that Apodaca may have owed Melton. Apodaca also claims there is no evidence that the seller refused to pay the commission. Thus, he claims the trial court erred as a matter of law in ruling that Apodaca was required to pay a commission to Melton.

[13] We agree with Apodaca. "Under contract law, a condition precedent is a condition that must be performed before the agreement of the parties becomes a binding contract or that must be fulfilled before the duty to perform a specific obligation arises." *Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018 (Ind. 1998). "As a general rule, an express condition must be fulfilled or no liability can arise on the promise that the condition qualifies." *Id*. Here, the contract required Melton to make "best effort to cause the Seller . . . to satisfy [Apodaca's] obligation to [Melton]." *Appellant's App. Vol. 2* at 18. Under the contract, Apodaca was not liable for the commission unless the seller "[would] not pay the . . . commission." *Id*. at 19. There is no evidence that Melton or any other person on behalf of ERA Realty made such efforts or that the seller refused to pay the commission. Therefore, the evidence is undisputed that Melton and ERA Realty failed to fulfill conditions precedent to collection of the commission. Thus, the trial court erred as a matter of law in finding that Apodaca was required to pay the commission to Melton for Apodaca's purchase of the Elberfeld residence. Accordingly, we reverse the trial court and direct it on remand to enter judgment for Apodaca on ERA Realty's Statement of Claim.

[14] Reversed and remanded.

Pyle, J., and Tavitas, J., concur.