**INTERNATIONAL HEALTH & RACQUET CLUB, INC., Appellant–Plaintiff,**

v.

**Jerry K. SCOTT and Marsha L. Scott, Appellees–Defendants.**

No. 79A04–0211–CV–538.

Court of Appeals of Indiana.

May 29, 2003.

David A. Rosenthal, Lafayette, IN, Attorney for Appellant.

Jason W. Bennett, James A. Gothard, Lafayette, IN, Attorneys for Appellees.

## OPINION

MATHIAS, Judge.

Jerry and Marsha Scott ("the Scotts") filed a complaint against International Health & Racquet Club, Inc. ("International Health") in Tippecanoe Superior Court alleging breach of contract, defamation, and invasion of privacy. After a bench trial, the trial court found that International Health had breached its membership contract with the Scotts, and the court entered a judgment against International Health in the amount of $10,258.78. International Health appeals and argues that the trial court erred when it found that International Health breached its membership contract with the Scotts by accepting the Scotts' cancellation fee, but refusing to cancel the membership contract. Finding that International Health waived the condition in the cancellation provision of the membership contract requiring proof of relocation of more than thirty miles, we affirm.

### Facts and Procedural History

On April 11, 1997, the Scotts entered into a two-year membership contract with International Health in which the Scotts agreed to pay a monthly membership fee in the amount of $59.60. However, the membership contract also contained the following cancellation provision:

MEMBER RELOCATION: Should a member permanently relocate to an area more than a thirty (30) mile radius from an affiliated Spa, the seller will consider a cancellation of membership. The following are required: (A) Verifiable documentation of member's new residence; (B) Member's membership card; (C) a

$75.00 cancellation fee; and (D) all financed accounts for memberships must be current on payments. When the four (4) conditions are met, the seller will cause to be cancelled both the membership and any monies due the financing source on the original membership.

Ex. Vol., Defendant's Ex. A. Before they agreed to enter into the two-year membership contract, the Scotts inquired about a membership on a monthly basis because they were temporarily residing in Lafayette. Due to the expense of a monthly membership and International Health's assurance that they could cancel the membership if they moved more than thirty miles away, the Scotts agreed to purchase the two-year membership.

On September 19, 1997, the Scotts informed International Health that they had relocated to Attica, Indiana, and wanted to cancel the membership contract. They provided their new address and phone number to International Health in addition to a map, which was generated on-line, showing a driving distance of 35.3 miles from their home in Attica to International Health's nearest location. They also provided a copy of the land contract for their Attica property, which noted that the Scotts purchased the property in 1994, and their $75 cancellation fee.

At that time, the general manager of International Health, Paul Fortwendel ("Fortwendel") told the Scotts that the information they provided was not sufficient to comply with the cancellation provision and requested proof that the Scotts had terminated their lease on their Lafayette apartment. Tr. p. 43. Therefore, on September 23, 1997, the Scotts sent a letter to Fortwendel stating that their lease "was terminated on July 31, 1997," and a copy of the lease was enclosed. Ex. Vol., Plaintiff's Ex. 2. The letter also listed the Scotts' new address in Attica and their

telephone number. International Health cashed the Scotts' $75 check, but did not apply it toward their account. Because they did not receive any further communication from International Health, the Scotts assumed that the membership contract was canceled.

In June 2001, the Scotts were attempting to purchase a boat, but were denied financing for the purchase because International Health had turned their account over to a collection agency. The Scotts contacted the collection agency and stated that their membership had been canceled. The collection agency then contacted International Health, which verified the debt. Until that time, the Scotts were unaware that the membership had not been canceled.

In October 2001, the Scotts met with a bank representative with regard to refinancing their home. The bank representative suggested that they contact International Health to resolve the collection matter. The Scotts contacted Fortwendel, who told them that he had requested further proof of their move to Attica by letter dated December 10, 1997, and that the Scotts failed to respond to that request. The Scotts denied receiving Fortwendel's letter, which was sent to their previous Lafayette address. Fortwendel also stated that he had decided not to accept the Scotts' cancellation, and that he applied the $75 check towards their account balance. Tr. pp. 47, 82.

Thereafter, on November 7, 2001, the Scotts filed a complaint against International Health alleging breach of contract, defamation, and invasion of privacy. A bench trial was held on August 21, 2002, and the trial court issued findings of fact and conclusions of law on September 13, 2002. The trial court found that 1) International Health cashed the Scotts' $75 check, but did not apply that amount to

their account; 2) the Scotts' residence in Attica was more than thirty miles from International Health; 3) Fortwendel's claim that he sent the December 10, 1997 letter to the Scotts was not credible; 4) the Scotts suffered additional costs in refinancing their mortgage because of the open collection account on their credit report; and 5) the Scotts "did suffer and endure embarrassment due to the intentional actions of [International Health] in reporting the [Scotts] to a collection agency when in fact the account had been cancelled by the acceptance of the [Scotts'] $75.00 cancellation fee." Appellant's App., Ex. 3.[1]

The trial court concluded that International Health had breached its contract with the Scotts "by accepting the cancellation fee, but refusing to cancel the membership contract," and when it reported the Scotts' account to a collection agency, the Scotts suffered economic and emotional harm. The trial court found the following damages as a result of the breach of contract:[2]

| | |
|---|---|
| FHA fee that was amortized in the [Scotts'] refinanced mortgage: | $ 2,687.46 |
| Additional mortgage insurance premium that was required by the FHA for a period of 5 years: | 1,474.80 |
| Termite inspection fee: | 63.00 |
| Additional interest paid by [the Scotts] prior to obtaining a new [m]ortgage due to the false reporting by [International Health] on [the Scotts'] [c]redit report: | 4,664.02 |
| Attorney fees incurred by the [Scotts]: | 1,369.50 |

Appellant's App., Ex. 3. Therefore, the trial court entered a judgment against International Health in the amount of $10,258.78. International Health now appeals. Additional facts will be provided as necessary.

## Standard of Review

In its brief, International Health argues this case involves a question of law, i.e. the interpretation of a contract, and therefore, we should apply a de novo standard of review. Br. of Appellant at 1–2. However, the Scotts requested special findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), and as the Scotts correctly assert, our standard of review is therefore two-tiered: we determine whether the evidence supports the trial court's findings, and whether the findings support the judgment. *Indianapolis Ind. Aamco Dealers Adver. Pool v. Anderson*, 746 N.E.2d 383, 386 (Ind.Ct. App.2001). We will not disturb the trial court's findings or judgment unless they are clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any reasonable inference from the evidence to support them. *Culley v. McFadden Lake Corp.*, 674 N.E.2d 208, 211 (Ind.Ct.App.1996). A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Carroll v. J.J.B. Hilliard, W.L. Lyons, Inc.*, 738 N.E.2d 1069, 1075 (Ind.Ct.App.2000), *trans. denied.* We will neither reweigh evidence nor judge the credibility of witnesses, but will consider only the evidence favorable to the judgment and all reason-

1. International Health's Appendix does not contain page numbers as required by Indiana Appellate Rule 51(C); however each document is referred to as an exhibit. Therefore, our citations to the Appendix will cite to the exhibit where the document is found.

2. The only mortgage loan the Scotts qualified for was an FHA loan because an open collection account was listed on their credit report. Appellant's App., Ex. 3.

able inferences to be drawn therefrom. *Anderson,* 746 N.E.2d at 386; *Gunderson v. Rondinelli,* 677 N.E.2d 601, 603 (Ind.Ct. App.1997).

### Discussion and Decision

■ International Health argues that the trial court erred when it found that International Health breached its membership contract with the Scotts "by accepting the cancellation fee, but refusing to cancel the membership contract." Appellant's App., Ex. 3. International Health contends that when it accepted the Scotts' cancellation fee, it specifically requested proof of relocation and that it requested proof of relocation for a second time in Fortwendel's letter dated December 10, 1997. Specifically, International Health argues that to cancel the membership contract, the Scotts were required to provide proof of relocation and "[t]his provision is a condition precedent to the Scott's right of cancellation and was not waived." Br. of Appellant at 8. The Scotts contend that by accepting their $75 cancellation fee, International Health "waived strict compliance with the distance term of the Membership Agreement, and the trial court was therefore justified in concluding that it was *International,* not the Scotts who breached that contract." Br. of Appellee at 8 (emphasis in original).

■ "Waiver is an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it." *van de Leuv v. Methodist Hosp. of Ind., Inc.,* 642 N.E.2d 531, 533 (Ind.Ct.App.1994). A condition in a contract may be waived by the conduct of a party. *Salcedo v. Toepp,* 696 N.E.2d 426, 435 (Ind.Ct.App.1998); *see also FOP Lodge No. 52 v. Civil City of Elkhart,* 551 N.E.2d 469, 471 (Ind.Ct.App. 1990) *trans. denied* (noting that strict performance of the terms of a contract on the part of one party may be waived by the other). "Once a condition has been waived, and such waiver has been acted upon, the failure to perform the condition cannot be asserted as a breach of contract." *Salcedo,* 696 N.E.2d at 435.

At trial, Marsha Scott testified that before she and her husband entered into the two-year membership contract, she discussed the cancellation provision with Fortwendel because the Scotts were temporarily residing in Lafayette and they would eventually relocate to a home they owned in Attica, Indiana.• Tr. p. 40. After the Scotts moved back to their home in Attica, they met with Fortwendel and gave him 1) their new address and phone number; 2) a map, which was generated online, showing a driving distance of 35.3 miles from their home in Attica to International Health's nearest location; 4) a land contract for their Attica property, which demonstrated that they purchased that property in 1994; and 5) a $75 cancellation fee. Fortwendel requested further proof of relocation; therefore, the Scotts sent a letter to Fortwendel with a copy of their Lafayette lease showing that the lease was terminated on ·July 31, 1997. The letter also noted the Scotts' new address and telephone number.

Fortwendel claims that he sent a letter to the Scotts on December 10, 1997, which stated that International Health was unable to cancel their contract without further proof of relocation such as a utility bill. The letter also stated that International Health would apply the Scotts' $75 check toward their monthly fees. The letter was sent to the Scotts' Lafayette address, and at trial, Fortwendel testified that he intentionally sent the letter to the Lafayette address even though the Scotts had provided their new Attica address. The Scotts testified that they never received the letter. The trial court found

that there was no evidence presented that the $75 check was credited to the Scotts' account. Furthermore, the trial court did "not credit" Fortwendel's December 10, 1997 letter because of its dubious authenticity and the fact that it was not sent to the Scotts' Attica address. Appellant's App., Ex. 3. International Health has not challenged those findings in this appeal.

In *Kimmel v. Cockrell,* 161 Ind.App. 659, 660, 317 N.E.2d 449, 450 (1974), the Kimmels entered into a lease agreement with the Cockrells, and when the Kimmels failed to pay $450 in rental payments, the Cockrells filed a notice of forfeiture and demand for possession of the property. Nearly three months after the notice of forfeiture was filed, the Kimmels tendered a check to the Cockrells for payment of all alleged arrearages, and the Cockrells cashed the check. *Id.* at 661, 317 N.E.2d at 450. The Cockrells later filed a complaint for possession of the real estate and a judgment was entered against the Kimmels. *Id.* at 660, 317 N.E.2d at 450. On appeal the Kimmels argued that when they cashed the check, the Cockrells waived any breach with regard to the alleged arrearages. *Id.* at 661, 317 N.E.2d at 450. We concluded that

> [i]t is our opinion that Cockrells have waived any alleged default in regard to the $450.00 arrearage specified in their notice of forfeiture when they accepted late payment of this sum on March 8, 1973. It is true that Kimmels did not cure the alleged default within thirty days of the notice of forfeiture, but the actions of the Cockrells in accepting late payment must act as a waiver of this breach.

*Id.* at 664, 317 N.E.2d at 452.

In *White River Conservancy District v. Commonwealth Engineers, Inc.,* 575 N.E.2d 1011, 1014 (Ind.Ct.App.1991), *trans. denied,* the Conservancy District entered into a contract whereby Commonwealth Engineers agreed to provide certain engineering services for the District. The contract contained specific provisions concerning submission of claims for payment of services, and although Commonwealth Engineers' claims allegedly were not submitted as required under the terms of the contract, the Conservancy District approved the claims and paid them accordingly. *Id.* at 1014, 1016. The Conservancy District was later dissolved, and after it failed to pay certain claims submitted by Commonwealth Engineers, Commonwealth obtained a judgment against the Conservancy District. *Id.* at 1014. On appeal, the Conservancy District argued that Commonwealth Engineers failed to comply with contractual provisions when it submitted its claims for payment. *Id.* at 1016. Our court determined that Commonwealth Engineers had substantially complied with the contract in submitting the claims and the Conservancy District accepted and approved many of the claims. Citing the principle that "[s]trict performance of the terms of a contract on the part of one party may be waived by the other," we held that the Conservancy District's approval of Commonwealth Engineers' claims "preclude [the] District from asserting that [Commonwealth Engineers'] claims were defective and therefore, uncollectible." *Id.*

In this case, the Scotts expressed their desire to cancel their membership contract and tendered to International Health the contractual $75 cancellation fee. International Health requested additional proof of relocation, and the Scotts complied with that request by providing a copy of their terminated Lafayette lease agreement. International Health never made any other credible requests for further proof of relocation. It also cashed the Scotts' check and did not apply those funds to the

Scotts' membership account. Although International Health argues that it did not receive sufficient proof of relocation as required by the membership contract, by cashing the Scotts' check after the Scotts provided their new address and phone number and a copy of their terminated lease agreement, International Health waived the condition in the cancellation provision requiring proof of relocation of more than thirty miles from its nearest location. Therefore, the trial court did not err when it determined that International Health breached the membership contract by accepting the Scotts' cancellation fee, and then failing to cancel the Scotts' membership. The judgment of the trial court is affirmed.

Affirmed.

KIRSCH, J., and MATTINGLY–MAY, J., concur.