**Patrick J. McGRAW, P.J. Mac, Inc. and Jamison Inn Partnership, Appellants–Defendants,**

**v.**

**Louis MARCHIOLI, Susanna Marchioli, and Edward Kisscorni on behalf of themselves and all others similarly situated as Members of the Jamison Residential Condominium Association, Inc., Appellees–Plaintiffs.**

No. 71A04–0312–CV–635.

Court of Appeals of Indiana.

Aug. 10, 2004.

William L. Wilson, Bernard E. Edwards, Jr., Anderson, Agostino & Keller, P.C., South Bend, IN, Attorneys for Appellants.

Shawn P. Ryan, South Bend, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Patrick J. McGraw, P.J. Mac, Inc., and Jamison Inn Partnership (collectively, "McGraw") appeal the trial court's Order Approving Compromise and Settlement of Class Action. In particular, McGraw claims that the trial court erroneously enforced the settlement agreement because a condition contained within the mediated settlement agreement had not been satisfied. Because McGraw elected to go forward with the agreement even after realizing that the condition contained therein would not be satisfied, we find that McGraw waived the condition and cannot now attempt to avoid any obligation under the settlement agreement because the condition was not satisfied. Consequently, we affirm.

### Facts and Procedural History

This case arises out of a dispute regarding the placement and acquisition of easements. Louis Marchioli, Susanna Marchioli, and Edward Kisscorni (collectively, "the Class Members") are owners of units in the Jamison Residential Condominiums complex, which is situated on what we will refer to as "the Residential Property." McGraw is developing the real estate physically adjacent to the north of the Residential Property, which we will refer to as "the 615 Property." At one time, the Residential Property and the 615 Property comprised a single tract of land, which was owned by Francis Smith. Smith conveyed the Residential Property to the Jamison Inn Partnership in 1987. The deed conveying the Residential Property reserved an easement for ingress and egress over the Residential Property and specified that the reason for reserving the easement was to prevent the 615 Property from becoming landlocked.[1] The location of this ease-

---

1. Because the 615 Property is accessible from public alleys, it was not actually in danger of

ment, however, was not specifically designated.[2]

Eventually, McGraw began developing Jamison House, a seven-unit condominium building, on the 615 Property. During the course of developing the 615 Property, construction vehicles accessed the 615 Property by driving through the grassy, landscaped common area located at the northern portion of the Residential Property. McGraw made known his intent to pave this path as a means of egress and ingress for the Jamison House Development.

Susanna Marchioli was not pleased with this turn of events because the traffic to and from the 615 Property invaded her quiet enjoyment of the common areas adjacent to her condominium, of which she owned an undivided interest. Thus, the Class Members filed a verified complaint to enjoin McGraw from further "developing, paving, using, or otherwise improving any of the common areas in the Residential Property." Appellant's App. p. 13. Subsequently, the parties agreed to submit their dispute to mediation.

As a result of settlement negotiations, the parties entered into a settlement agreement by which the Class Members agreed to grant McGraw three easements along the Residential Property: the Western Easement, the Eastern Easement, and the Northern Easement. The Class Members also agreed to cooperate with McGraw in obtaining an easement from the owners of an adjacent lot—the Turtle Creek Easement.[3] In exchange for the three easements on the Residential Prop-

erty and the Class Members' cooperation in obtaining the Turtle Creek Easement, McGraw agreed to pay the Class Members one lump sum of $15,000. Additionally, the settlement agreement expressly provided: "This settlement is contingent on the parties securing the Turtle Creek Easement within a period of ninety (90) days from the date of this Agreement and obtaining any necessary approval from the Court." Appellant's App. p. 205, 215. The parties executed the Settlement Agreement on June 14, 2001.

The Class Members cooperated with McGraw in his attempt to obtain the Turtle Creek Easement. Due to what McGraw perceived as an exorbitant asking price for the Turtle Creek Easement,[4] however, McGraw decided to forgo it as a means of access to the Jamison House Development. Nonetheless, shortly after the ninety-day time period for obtaining the Turtle Creek Easement expired, McGraw elected to partially pave the Western Easement described in the Settlement Agreement. Additionally, at some point before September 2003, Jamison House residents began using the Northern Easement. Although McGraw was using at least two of the three easements the Class Members had agreed to grant McGraw, McGraw had not yet paid the Class Members the $15,000 specified in the Settlement Agreement for use of the easements. Consequently, the Class Members moved the trial court to enforce the Settlement Agreement.

After a hearing on the matter, the trial court "determined that the Plaintiffs have

---

being landlocked.

2. Based on an affidavit filed by Smith, we know that he would traverse the panhandle portion of the Residential Property, which was located in the northeast portion of the parcel along the eastern border of the 615 Property.

3. McGraw was responsible for paying any premium for the Turtle Creek Easement.

4. Turtle Creek wanted to charge McGraw $3000 per year for use of the Turtle Creek Easement.

complied with the gravamen of the settlement agreement, that defendants have taken advantage of and have benefitted [sic] from the easements contemplated to be given by plaintiffs under the Settlement Agreement, and that · the Settlement Agreement should be enforced." Appellant's App. p. 7–8. McGraw now appeals.

## Discussion and Decision

■ McGraw contends that the trial court erred when it enforced the Settlement Agreement because one of the conditions necessary to make the agreement enforceable had not been satisfied. In particular, McGraw argues that because the Turtle Creek Easement was not obtained, the Settlement Agreement was rendered legally defunct and should not have been enforced. The Class Members counter that because McGraw used at least one or more of the easements specified in the Settlement Agreement—and even paved the Western Easement—McGraw waived the condition that the Turtle Creek Easement be obtained. Having waived this condition, the Class Members continue, McGraw cannot now try to avoid his obligation to pay the Class Members for use of the easements.

■ At the outset we note that it is well settled that the construction of settlement agreements is governed by contract law. *Ind. State Highway Comm'n v. Curtis*, 704 N.E.2d 1015, 1018 (Ind.1998); *see also* 5 I.L.E. *Compromise & Settlement* § 21 (1958). Construction of the terms of a written contract is a pure question of law for the court, and we conduct a de novo review of the trial court's conclusions in that regard. *Park Hoover Village Condo. Ass'n, Inc. v. Ardsley/Park Hoover Ltd. P'ship*, 766 N.E.2d 13, 17 (Ind.Ct.App. 2002), *reh'g denied.*

■ The parties agree that the obtaining of the Turtle Creek Easement was a condition precedent explicitly set forth in the Settlement Agreement. Under contract law, a condition precedent is a condition that must be performed before the agreement of the parties becomes a binding contract or that must be fulfilled before the duty to perform a specific obligation arises. *Curtis*, 704 N.E.2d at 1018; *see also Restatement (Second) of Contracts* § 224 (1981) (a condition is an event that must occur before performance under a contract becomes due); 13 Richard A. Lord, *Williston on Contracts* § 38.7 (4th ed.2000) (a condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or contractual duty arises).

■ As a general rule, an express condition must be fulfilled or no liability can arise on the promise that the condition qualifies. 13 *Williston on Contracts* § 38.7; *Restatement (Second) of Contracts* § 225 (1981) (if a condition does not occur, performance of a duty subject to a condition cannot become due and if the condition can no longer occur, the duty is discharged). Indiana courts have consistently recognized this rule. *See, e.g., Blakley v. Currence*, 172 Ind.App. 668, 361 N.E.2d 921, 923 (1977) (holding that an agreement containing the clause "subject to loan approval" did not become a binding contract because approval was not obtained); *Wetzel v. Andrews*, 136 Ind.App. 117, 198 N.E.2d 19, 21 (1964) (holding that a lease was not valid where the condition precedent of statutorily required approval by the governmental entity was not met). Performance of a condition, however, may be excused by waiver. *Curtis*, 704 N.E.2d at 1019.

■ "Waiver is an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it." *Int'l*

*Health & Racquet Club, Inc. v. Scott,* 789 N.E.2d 62, 66 (Ind.Ct.App.2003) (quoting *van de Leuv v. Methodist Hosp. of Ind., Inc.,* 642 N.E.2d 531, 533 (Ind.Ct.App. 1994), *reh'g denied*). A condition in a contract may be waived by the conduct of a party. *Id.* A waiver of a condition that occurs after the time for performance of the condition becomes due is referred to as an election:

[A] party that has waived a condition *after* the time for occurrence of the condition has expired is subject to a dramatically different rule, one that has been influenced by the concept of election. The word *election* signifies a choice, one that is often binding on the party that makes it.... When the time for occurrence of a condition has expired, the party whose duty is conditional has such a choice. That party can take advantage of the nonoccurrence of the condition and treat the duty as discharged or can disregard the nonoccurrence of the condition and treat the duty as unconditional. Courts often hold that a party that chooses to disregard the nonoccurrence of a condition is bound by an election to treat the duty as unconditional; that party cannot reinstate the condition even if the other party has not relied on this choice.

II E. Allen Farnsworth, *Farnsworth on Contracts* § 8.5 (3d ed.2004) (emphasis in original).

The Settlement Agreement was expressly conditioned upon McGraw obtaining the Turtle Creek Easement within ninety days. McGraw could have obtained the Turtle Creek Easement within the allotted time, but he was unwilling to pay the premium associated with the use of this easement. Instead, McGraw elected to wait until after the ninety days expired and then—knowing that the condition precedent had not been satisfied—began using at least two of the other easements specified in the Settlement Agreement. By using the easements specified in the Settlement Agreement, McGraw evinced an intent to elect to go forward with the Settlement Agreement despite the fact that the condition precedent had not been satisfied. McGraw is bound by his election to use at least two of the easements specified in the Settlement Agreement and cannot now attempt to rely on that condition to avoid having to satisfy his end of the bargain.

McGraw asserts that by paving the Western Easement, he was merely asserting the reserved easement rights from the Smith Deed, not waiving any rights or ratifying the Settlement Agreement. We reject this self-serving assertion for varied reasons. First, Jamison House residents are using at least two easements, not just one as was specified in the Smith Deed. Second, the easements being used are located in the same general area as the easements specified in the Settlement Agreement. Third, the easement reserved by the Smith Deed was not specifically located, but Smith averred that the easement he used when he retained possession of the 615 Property was located on the northeastern portion of the Residential Property. Fourth, the purpose of the reserved easement was to assure that the 615 Property would not become landlocked, which is not a concern because the 615 Property can be accessed by public alleys. In light of the foregoing, we cannot say that the trial court erred by enforcing the Settlement Agreement.

Affirmed.

SULLIVAN J., and MAY, J., concur.