

FILED
Mar 19 2019, 8:50 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert A. Welsh
Connor H. Nolan
Harris Welsh & Lukmann
Chesterton, Indiana

ATTORNEY FOR APPELLEES

C. Anthony Ashford
Ashford Law Group, P.C.
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cheng Song, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Thomas Iatarola and Theresa Iatarola, <br> *Appellees-Defendants.* | March 19, 2019 <br><br> Court of Appeals Case No. 18A-PL-2134 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Roger V. Bradford, Special Judge <br><br> Trial Court Cause No. 64D02-1109-PL-9151 |

**Najam, Judge.**

## Statement of the Case

Cheng Song appeals the trial court's order denying his request for attorney's fees. Song presents three issues for our review, which we consolidate and restate as one issue, namely, whether the trial court erred when it denied his request for attorney's fees. We reverse and remand with instructions.

# Facts and Procedural History

[2] This is the second appeal in this matter. In our prior opinion, we set out the facts and procedural history as follows:

> In 1998, the Iatarolas purchased thirty-four acres of land that was zoned for agricultural use. Thomas [Iatarola] built several structures on the property to warehouse equipment and inventory from his telecommunications and classic car sales business.
>
> The land, which was adjacent to the Porter County Airport, was mortgaged. The Iatarolas decided to try to sell ten acres of their land to reduce or repay their debt to the bank. Thomas and Theresa [Iatarola] agreed between themselves that Thomas would take charge of arranging for the sale of their land, and he acted as an agent on behalf of his wife from September 2010 through September 2011. On September 14, 2010, Thomas retained Robert Macmahon as their exclusive real estate agent for the sale of the ten acres.
>
> On September 14, 2010, Macmahon showed Thomas a listing agreement for the real estate sale. The form was entitled "Listing Contract (Exclusive Right to Sell) Commercial-Industrial Real Estate"; under the section entitled "Seller's Representations," the property is stated to be zoned I-2 Industrial. Macmahon asked Thomas to review the listing to ensure its accuracy and asked both Thomas and Theresa to initial each page of the listing agreement to verify that they read it and that it was accurate. Thomas did so, but Theresa refused to sign her initials because the listing inaccurately stated that the zoning was I-2 Industrial rather than Agricultural. Theresa told Thomas that her reason for not initialing the listing and told him to have Macmahon correct the listing error.
>
> A few days later, Thomas told Theresa that he had spoken with Macmahon and that the listing had been corrected. Theresa did

not see or initial a corrected listing. On or around September 14, 2010, Macmahon began advertising the real estate online. The advertisements stated that the land was zoned I-2 Industrial and that it was suitable for warehousing and other light industrial uses.

In December 2010, Song saw online the advertisement for the sale of the ten acres of land. At this time, Song was a New Jersey resident who wanted to buy industrial real estate in northwest Indiana to use for an imported tool business he wanted to start. Song arranged a meeting with Macmahon to take place on December 31, 2010, to visit two industrially zoned properties, one of which was the Iatarolas' land. During their meeting, Song told Macmahon that he wanted to buy property that had buildings suitable for warehousing for an imported tool business, and they discussed Song's ability to expand and build additional industrial warehousing on the property. In an internet advertisement that has Macmahon's handwriting on it, the property's type is described as "Industrial For Sale"; the property overview states that the land is "in an established industrial area."

Also on December 31, 2010, Song told the Iatarolas of his intended use of the property he wanted to purchase. That same day, Song signed a purchase agreement with the Iatarolas to buy their ten acres for $600,000. The contract was entitled "Purchase Agreement Commercial-Industrial Real Estate."

Sometime before the signing, the Porter County Airport had stated that it might impose a runway protection zone in this property to comply with Federal Aviation Administration ("FAA") requirements. The purchase agreement included a contingency clause that stated, "This agreement is contingent upon the Buyer's agreement with the final approval of FAA regarding land use." After reviewing the airport's proposal, Song worried that the runway protection zone could lead to a governmental taking of part of the property that he was

purchasing, the removal of some of the warehousing buildings, or a restriction on the height of future construction. On January 6, 2011, he exercised his contingency right and terminated the purchase agreement.

For the next two and one-half months, Song and Thomas negotiated a new sale of a different part of the Iatarolas' land. On March 21, 2011, they signed a second purchase agreement for sixteen acres, which included most of the original ten acres with the warehousing buildings plus additional acres of land outside the potential runway protection zone. This second purchase agreement was entitled "Purchase Agreement Commercial-Industrial Real Estate." It required $150,000 in earnest money and included a provision for liquidated damages of $150,000 if either party breached the contract. Song and Thomas signed an addendum to the second purchase agreement that provided:

> Closing date will be predicated on the Seller's ability to vacate and exit the subject property. A maximum of 180 days ("Due Diligence Period") from the day of acceptance of this contract, has been agreed by both parties. When the seller advises the Buyer in writing, that the exit is complete, the Buyer will have 30 days, from that date, to close.

Song deposited the $150,000 earnest money in the bank.

In early June 2011, Thomas called Macmahon to say that while reviewing the transaction paperwork, he saw that the September 14, 2010, listing inaccurately stated that the property for sale was zoned I-2 Industrial instead of Agricultural. Macmahon acknowledged the error and made a note to his file of the date and subject of their phone call. That same day, Macmahon corrected the zoning represented in his advertisements online so that they showed the property to be zoned Agricultural. Neither Macmahon nor Thomas told Song about this error.

On August 7, 2011, Thomas and Song met on the property for a final inspection, and Thomas told Song that the property was zoned Agricultural. Thomas told Song that Agricultural zoning was preferred over Industrial zoning because the tax rate was lower; he also stated that Agricultural zoning allowed for the land to be used for the industrial warehousing and import tool business that Song wanted to start. Song told Thomas that he needed to consult an attorney to determine whether the Agricultural zoning would suit his needs. Later that day, Song saw that the online listing for the property had been updated to show that it was zoned Agricultural.

On August 12, 2011, Lee Lane, Song's attorney, wrote to Macmahon to advise him that the Porter County zoning regulations did not permit the use of warehousing for industrial purposes on agriculturally-zoned property. Lane stated that Song would not continue with his purchase unless the Iatarolas secured I-2 Industrial zoning and demanded a price reduction in order to compensate Song for the increase in real estate tax that would result from the change from agricultural to industrial zoning.

The Iatarolas refused to obtain the I-2 Industrial zoning or consider a price reduction. Song subsequently exercised his due diligence contingency rights under the contract, terminated the purchase agreement within the 180-day due diligence period provided in the addendum, and demanded the return of his $150,000 earnest money deposit, which was being held in escrow at Horizon Bank. The Iatarolas refused to return Song's escrow deposit.

On September 19, 2011, Song filed a complaint against the Iatarolas, alleging actual fraud, constructive fraud, breach of contract, and contract rescission. The Iatarolas filed a counterclaim, also alleging actual and constructive fraud. On January 22, 2014, both parties filed motions for summary judgment; the trial court denied both. A jury trial took place

from May 16-19, 2016. On May 19, 2016, Song filed a motion for judgment on the evidence, which the trial court denied. The jury returned a verdict for Song, [which stated as follows: "We, the Jury, decide in favor of the Plaintiff, Cheng Song, and against the Defendants, Thomas Iatarola and Theresa Iatarola, that the Plaintiff is entitled to and shall have the return of his earnest money in the amount of ONE HUNDRED AND FIFTY THOUSAND AND 00/100 DOLLARS ($150,000). A]nd the trial court entered judgment on the jury's verdict in Song's favor for $150,000. On June 20, 2016, the Iatarolas filed a motion to correct error[]. On June 23, 2016, Song filed a motion for an award of attorney[']s fees, prejudgment interest, and postjudgment interest. On August 12, 2016, Song filed a motion for an award of his post-trial attorney[']s fees.

On August 12, 2016, the trial court held a joint hearing for the Iatarolas' motion to correct error[] and Song's motions for attorney[']s fees, prejudgment interest, and postjudgment interest. The trial court denied all motions.

*Song v. Iatarola*, 76 N.E.3d 926, 930-32 (Ind. Ct. App. 2017) (record citations omitted) ("*Song I*"), *clarified on reh'g*, 83 N.E.3d 80 ("*Song II*"), *trans. denied*.

[3] Song appealed the trial court's denial of his motions, and the Iatarolas cross-appealed the court's denial of their motion to correct error. The Iatarolas also appealed the trial court's denial of their motion for summary judgment. In *Song I* we held that the trial court did not err when it denied the Iatarolas' summary judgment motion. But we held that the trial court did err when it denied Song's motion for prejudgment interest and when it "declined to consider" his request for attorney's fees. *Id.* at 939.

[4]     In particular, on the issue of Song's attorney's fee request, we noted that the Iatarolas had "argue[d] that because Song repudiated the purchase agreement, he [could not] seek to have the agreement's attorney[']s fees provision enforced." *Id.* at 938. That provision provided as follows: "Any party who is the prevailing party against any other party in any legal or equitable proceeding relating to this Agreement shall be entitled to recover court costs and reasonable attorney fees from the non-prevailing party." *Id.* However, we did not address the Iatarolas' contention that Song had repudiated the agreement. Instead, we addressed the trial court's conclusion that, because "[t]here was no request before the jury . . . with regard to attorney's fees[,]" the court could not grant Song's attorney's fee request. *Id.*

[5]     We rejected the trial court's reasoning in denying Song's request for attorney's fees and held as follows:

> Song was not required to submit to the jury a request for attorney[']s fees. In this case, because the jury had already fulfilled its role, the trial court was the appropriate trier of fact in determining whether attorney[']s fees should have been awarded. Further, Song was not required to submit a petition for attorney[']s fees before the jury returned its verdict; indeed, doing so would have been premature. The appropriate time for Song to petition the trial court for attorney[']s fees was after the jury returned a verdict in his favor—which is what Song did. The trial court erred when, instead of ruling on the issue, it simply declined to consider it. Accordingly, the judgment of the trial court is reversed and remanded so that the trial court may consider the issue of attorney[']s fees as provided for in the parties' purchase agreement.

*Id.* at 938-39.[1]

[6] On remand, the parties submitted memoranda to the trial court. In their memorandum, the Iatarolas reiterated their contention that Song had "repudiated the purchase agreement and therefore [could not] seek attorney[']s fees pursuant to the same." Appellant's App. Vol. 2 at 29. In particular, the Iatarolas asserted that,

> [a]s part of his pretrial contentions, Song acknowledged that he "terminated the transaction" with the Iatarolas after determining that the zoning on the subject property was agricultural, and not industrial. The contentions further reflected that Song was seeking the return of his $150,000.00 earnest money based upon such claims as breach of contract, fraud in the inducement, contractual right to terminate due to "due diligence provision[,"] and rescission. Since Song repudiated the purchase agreement and sought to be, and was in fact, returned to the status quo ante, he cannot now, after the conclusion of trial, seek to enforce an attorney fee provision from the repudiated contract.

*Id.* at 30. Following a hearing, the trial court awarded prejudgment interest to Song but denied his request for attorney's fees. In particular, in its order, the court stated in relevant part as follows:

> The Court has now had the opportunity to review the memoranda regarding attorney[']s fees and the case law cited; and [the court] concludes that the jury's verdict at the jury trial in

---

[1] Song contends that our instructions to the trial court on remand constitute law of the case and required the court to award him attorney's fees. However, our instructions left the discretion to award fees, or not, with the trial court, and, as such, application of the law of the case doctrine here is not appropriate.

this cause was based on [Song]'s repudiation of the contract between the parties. Therefore, the cont[r]act having been repudiated, the attorney[']s fees provision of the contract is no longer applicable and the Court rules that [Song] is not entitled to recover attorney[']s fees in this cause.

*Id.* at 22. This appeal ensued.

## Discussion and Decision

[7] Song appeals the trial court's denial of his request for attorney's fees following a hearing where the parties presented argument, but no witnesses were called. Because the trial court's judgment was based on a paper record, we are in as good a position as the trial court to determine whether Song is entitled to attorney's fees under the terms of the parties' agreement, and our review is *de novo*. *Anderson v. Wayne Post 64, Am. Legion Corp.*, 4 N.E.3d 1200, 1206 (Ind. Ct. App. 2014), *trans. denied*.

[8] Song contends that he is entitled to attorney's fees under the parties' agreement because he did not repudiate the contract but exercised his right under the contract to terminate the purchase agreement when he discovered that the property was not zoned industrial, as advertised, and, thus, that he is the prevailing party in this litigation. The Iatarolas contend that Song's termination of the agreement constituted a repudiation and the trial court correctly denied his request for attorney's fees on that basis. We agree with Song.

[9] To repudiate is to reject without legal justification. Black's Law Dictionary defines "repudiation" as: "A contracting party's words or actions that indicate

an intention not to perform the contract in the future; a threatened breach of contract." Black's Law Dictionary 1496 (10th ed. 2014). Thus, the Iatarolas contend, in effect, that Song committed an anticipatory breach of the purchase agreement. *See, e.g.*, *Metro Holdings One, LLC v. Flynn Creek Partner, LLC*, 25 N.E.3d 141, 160 (Ind. Ct. App. 2014), *trans. denied*. However, as we explain below, Song did not repudiate the purchase agreement but exercised his right to terminate the agreement under the due diligence provision.

[10] The jury's verdict was a general verdict in favor of Song and awarded him "the return of his earnest money in the amount of" $150,000. Appellant's App. Vol. II at 23. On remand, in support of their contention that Song could not seek attorney's fees under the purchase agreement, the Iatarolas "argued [to the trial court] that Song's claims and the issues presented to and decided by the jury were based upon Song's repudiation, or rejection of the purchase agreement." Appellees' Br. at 11. However, our review of the trial transcript reveals no argument or jury instructions addressing Song's alleged repudiation of the purchase agreement.[2] And the Iatarolas do not direct us to any evidence presented at trial to support their claim that Song repudiated the agreement.

---

[2] We take judicial notice of the trial transcript, which we have obtained via the Odyssey case management system. *See Horton v. State*, 51 N.E.3d 1154, 1160-61 (Ind. 2016) (observing that Ind. Evidence Rule 201(b)(5) "now permits courts to take judicial notice of 'records of a court of this state,'" and that such records are presumptively sources of facts "that cannot reasonably be questioned"); *see also* Ind. Appellate Rule 27 (providing that the "Record on Appeal . . . consist[s] of the Clerk's Record and all proceedings before the trial court . . . whether or not transcribed or transmitted to the Court on Appeal").

[11] Rather, the Iatarolas categorically assert that Song's acknowledgment that he terminated the agreement meant that he had repudiated or rescinded the contract. Both in their argument to the trial court and in their brief on appeal, the Iatarolas conflate and confuse the terms termination, repudiation, and rescission. But those terms have distinct meanings in the law, and, on these facts and this record, the Iatarolas' contention that Song's termination was equivalent to a repudiation or rescission is not well taken.[3]

[12] The addendum to the purchase agreement included a 180-day due diligence period "from the day of acceptance of [the] contract [on March 21, 2011]." *Id.* at 187. As we observed in *Song I*, "[g]enerally, in real estate transactions, the term 'due diligence' refers to the parties' obligations to 'investigate facts rather than make assumptions about them.'" 76 N.E.3d at 933 (quoting *Hartig v. Stratman*, 760 N.E.2d 668, 671 (Ind. Ct. App. 2002)). But we noted that the parties' purchase agreement "does not state the purpose of the due diligence period" and is, therefore, "ambiguous." *Id.* At trial, Song argued that, in light of the zoning discrepancy, that provision entitled him to terminate the purchase agreement during the due diligence period, which he did, and to recover the

---

[3] To the extent the Iatarolas contend that the jury's verdict was based on Song's request to *rescind* the contract, there is no indication in the record that Song's alternative claim for rescission was even tried to the jury. Indeed, in *Song I* we noted that the trial court "did not grant Song's request to rescind the contract," 76 N.E.3d at 937, and it is well settled that "rescission is an equitable remedy and must be tried by the court," *Stevens v. Olsen*, 713 N.E.2d 889, 891 (Ind. Ct. App. 1999), *trans. denied*. The Iatarolas' contention is without merit.

earnest money. Because the due diligence provision is ambiguous, the jury, as factfinder, was entitled to adopt Song's interpretation.[4]

[13] The evidence presented at trial shows that, during the final inspection of the property on August 7, 2011, which occurred within the due diligence period, Thomas informed Song, for the first time, that the property was zoned agricultural, not industrial. By letter dated August 12, Song's attorney advised Macmahon "that Song would not continue with his purchase unless the Iatarolas secured I-2 Industrial zoning and demanded a price reduction in order to compensate Song for the increase in real estate tax that would result from the change from agricultural to industrial zoning." *Song I*, 76 N.E.3d at 932. The Iatarolas responded that they would not secure different zoning for the property. Accordingly, "Song subsequently exercised his due diligence contingency rights *under the contract*, terminated the purchase agreement within the 180-day due diligence period provided in the addendum, and demanded the return of his $150,000 earnest money deposit," which the Iatarolas refused to return. *Id.* (emphasis added).

[14] There is no evidence that Song repudiated the purchase agreement. Indeed, the trial court did not instruct the jury on repudiation and the parties made no argument on repudiation. Instead, the court instructed the jury that it could

---

[4] The Iatarolas argued at trial that the due diligence provision applied only to the Iatarolas' responsibility to vacate the premises within 180 days of the date of the purchase agreement. The jury verdict in favor of Song shows that the jurors rejected that interpretation of the provision.

find that either Song or the Iatarolas had breached the purchase agreement and that the non-breaching party was entitled to the earnest money.[5] Consistent with that instruction, Song argued that the purchase agreement

> gave 180-days' due diligence to Mr. Song to investigate the usability of this property for his intended purpose. Within that 180 days, he did so and withdrew because the property did not qualify, could not be used for his intended purpose, and because the Iatarolas refused as a part of the transaction before a closing to go ahead and get it zoned [industrial].

Trial Tr. Vol. 4 at 186. And Song argued that the Iatarolas breached the purchase agreement when, upon his termination of the agreement during the due diligence period, they did not return the earnest money. Our review of the record, including the jury instructions and arguments, reveals that the jury's award of earnest money to Song could only have been based on a finding that the Iatarolas breached the purchase agreement.

[15]     Further, the law is well settled that,

---

[5] Final Instruction No. 5 provided as follows:

> The terms of the March 21, 2011[,] contract, also called a Purchase Agreement, state that upon a breach of the agreement by either party, the non-breaching party is entitled to liquidated damages. If you determine that the Defendants breached the March 21, 2011[,] contract, then under the terms of the contract, Plaintiff is entitled to a return of his earnest money deposit for the Defendants' breach. If however, you find that the Plaintiff breached the March 21, 2011[,] contract, then the Defendants are entitled to receive the earnest money deposit.

Appellant's App. Vol. II at 107.

[w]hen one party repudiates the contract, *the injured party* has the option of pursuing one of three remedies: 1) he may treat the contract as rescinded *and recover* upon quantum meruit; 2) he may keep the contract alive for the benefit of both parties, being at all time ready and able to perform, and at the end of the time specified in the contract for performance, *sue to recover* under the contract; or 3) he may treat the repudiation as putting an end to the contract and *sue to recover* the damages caused by refusing to carry out the contract.

*Scott-Reitz Ltd. v. Rein Warsaw Assoc.*, 658 N.E.2d 98, 103-04 (Ind. Ct. App. 1995) (emphases added). Here, if, as the trial court found, the jury had based its verdict on Song's repudiation of the purchase agreement, then the Iatarolas would have been the injured party and entitled to damages rather than Song. *See Scott-Reitz Ltd.*, 658 N.E.2d at 103-04. But the jury entered a verdict in *Song*'s favor and awarded him the earnest money. Thus, both as a matter of fact and a matter of law, the jury's damage award precludes the trial court's determination that the verdict was based on Song's repudiation of the purchase agreement.

[16] We hold that the trial court erred when it found that the jury's verdict was based on Song's repudiation of the purchase agreement and concluded that Song was not entitled to attorney's fees under the agreement. Song was the prevailing party at trial and, as such, is "entitled to recover court costs and reasonable attorney[']s fees" incurred in the course of this litigation. Appellant's App. Vol. II at 185. Accordingly, we reverse and remand with instructions for the trial court to conduct a hearing to determine the amount of

reasonable attorney's fees incurred by Song, including appellate attorney's fees, and to award those fees and court costs to Song.

[17]    Reversed and remanded with instructions.

Pyle, J., and Altice, J., concur.