*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THOMAS RIDGWAY,

      Plaintiff-Appellee,

v

ROBERT STRATTON,

      Defendant-Appellant.

UNPUBLISHED
July 2, 2024

No. 363574
Berrien Circuit Court
LC No. 2020-000115-CK

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order and judgment, entered following a bench trial, which granted plaintiff specific performance—requiring defendant to perform his contract with plaintiff to sell and convey a piece of real property—as well as court costs and attorney fees. We reverse the order, vacate the judgment, and remand for entry of judgment in defendant's favor and for determination of the amount of court costs and attorney fees owed to defendant as the prevailing party.

## I. FACTS

Plaintiff made an offer to purchase defendant's real property and defendant accepted plaintiff's offer on May 19, 2020. The purchase agreement stated, in relevant part, that the transaction was contingent upon plaintiff's ability to obtain a conventional first mortgage loan for 80% of the purchase price within 21 days after accepting the agreement. Specifically, Paragraph F, titled "Time for Obtaining Financing," states:

> 2. **APPROVAL**: No more than 21 days after acceptance of this Agreement shall be allowed for obtaining loan approval or mortgage assumption approval. If an approval is not obtained within the time specified above, this Agreement may terminate unless an extension of time for this purpose is mutually agreed to in writing.

And Paragraph G, titled "Closing," states:

1. **DATE**: The closing of the sale (the "Closing Date") shall be on or before <u>June 30, 2020</u>, or within 5 days after <u>Lender Approval</u>, whichever is later or this Agreement shall terminate unless an extension of time is mutually agreed to in writing.

Further, Paragraph T, titled "Time," stated that time was of the essence. And Paragraph V, titled "Attorney's Fees," stated that any "party to this Agreement who is the prevailing party in any legal or equitable proceeding against any other party brought under or with relation to the Agreement or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party." The purchase agreement stated that it was to be construed under and according to the laws of Indiana.

On June 9, 2020, the undisputed 21st day after defendant accepted plaintiff's offer, plaintiff was notified by the mortgage broker that the initial underwriting on plaintiff's loan application had been completed—which did not constitute final loan approval. Rather, on June 10, 2020, plaintiff was notified by the mortgage company of "conditional approval" and several additional documents were requested from plaintiff. More specifically, the notice stated: "I am pleased to inform you that your mortgage loan has been initially approved by the underwriter as long as the documentation requested below is submitted and approved."

On June 12, 2020, defendant notified plaintiff that he was terminating the purchase agreement because plaintiff had failed to obtain loan approval by the June 9 deadline. Subsequently, plaintiff obtained final loan approval from the mortgage company on June 22, 2020. When defendant was notified of the clear-to-close authorization, defendant restated that he was not selling plaintiff the property because plaintiff failed to obtain loan approval by the June 9 deadline.

In July 2020, plaintiff filed a complaint against defendant for specific performance of the contract and seeking incidental damages as well as attorney fees and costs. During the litigation defendant sought summary disposition, arguing that plaintiff failed to obtain loan approval by the deadline stated in the purchase agreement and defendant properly exercised his contractual right to terminate the purchase agreement; therefore, the case must be dismissed. Plaintiff replied that he obtained approval of the loan application and satisfied the conditions required of the mortgage company. The trial court denied the motion for summary disposition, holding that there was a question of material fact whether the mortgage application was approved on June 9, 2020.

In February 2022, a two-day bench trial was conducted. Plaintiff called Marc Churchill, a mortgage loan origination officer, to testify as an expert witness. Churchill opined that plaintiff received timely loan approval under the purchase agreement, pointing out that the contract did not read "unconditional loan approval" or "clear to close." Churchill admitted that plaintiff had not obtained final loan approval by June 9, but had only received conditional loan approval by that date. And conditional approval did not assure plaintiff that he would receive the loan. After plaintiff concluded his case, defendant moved for a directed verdict, arguing that the evidence conclusively established that the approval received by plaintiff was conditional and that plaintiff did not receive actual, final loan approval until June 22, 2020. Therefore, plaintiff failed to meet his burden of proof that he complied with the purchase agreement and its June 9 deadline. The trial court denied the motion. Thereafter, defendant presented the expert witness testimony of Dr.

Spenser Robinson who opined that plaintiff did not have loan approval by June 9, 2020, and thus, defendant had the contractual right to terminate the purchase agreement.

After the close of evidence, the trial court concluded that (1) Indiana substantive law was controlling in this case; (2) the term "loan approval" constituted a latent ambiguity under Indiana law; (3) because the parties did not specify the type of loan approval that plaintiff had to obtain by June 9, 2020, plaintiff complied with the purchase agreement by obtaining conditional loan approval; (4) plaintiff sustained his burden of proof by showing that defendant's actions after June 9 and before June 30, 2020 constituted an anticipatory breach; and (5) plaintiff was entitled to recover his court costs and reasonable attorney fees as the prevailing party. Accordingly, the trial court granted plaintiff's request for specific performance of the purchase agreement and held that, as the prevailing party, plaintiff was entitled to recover court costs and attorney fees pursuant to the purchase agreement.

Defendant moved for reconsideration, arguing that the trial court erred by ruling that the term "loan approval" was ambiguous, that defendant anticipatorily repudiated the purchase agreement, and that plaintiff was the only prevailing party. The trial court denied the motion on the issues of ambiguity and anticipatory repudiation, but agreed that it had erroneously held that plaintiff was the only prevailing party because the court had rejected plaintiff's claim for incidental damages. The parties subsequently entered into an agreement that defendant would pay plaintiff net costs and attorney fees of $10,000, depending on who prevailed on appeal, and a final judgment was entered in October 2022. This appeal followed.

## II. ANALYSIS

## A. DIRECTED VERDICT

Defendant argues that the trial court erroneously denied his motion for a directed verdict because the evidence conclusively established that plaintiff only received conditional loan approval and the purchase agreement unambiguously required him to obtain unconditional, final loan approval. We agree.

This Court reviews de novo a trial court's decision on a motion for directed verdict. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). "A directed verdict is appropriately granted only when no factual questions exist on which reasonable jurors could differ." *Cacevic v Simplimatic Engineering Co (On Remand)*, 248 Mich App 670, 679-680; 645 NW2d 287 (2001).

The parties do not dispute that, according to the choice-of-law provision in the purchase agreement, Indiana law is controlling as to the purchase agreement. Under Indiana law, the "[i]nterpretation and construction of contract provisions are questions of law." *B&R Oil Co, Inc v Stoler*, 77 NE3d 823, 827 (Ind App, 2017). And questions of law are reviewed de novo. *Id*.

Although unclear, it appears that the trial court denied defendant's motion for directed verdict on the ground that the phrase "loan approval" was ambiguous, and thus, even a conditional loan approval satisfied the condition precedent set forth in the purchase agreement. This interpretation is consistent with the trial court's ultimate conclusion at the end of the trial that the

term "loan approval" constituted a latent ambiguity because the "type" of loan approval was not specified. We cannot agree.

"Indiana courts recognize that it is in the best interest of the public not to unnecessarily restrict persons' freedom to contract." *Barrington Mgt Co, Inc v Paul E Draper Family Ltd Partnership*, 695 NE2d 135, 140 (Ind App, 1998). "The goal of contract interpretation is to determine the intent of the parties when they made the agreement." *Tender Loving Care Mgt, Inc v Sherls*, 14 NE3d 67, 72 (Ind App, 2014). When interpreting a contract, its meaning should be determined "from an examination of all of its provisions, without giving special emphasis to any word, phrase or paragraph." *Simon Prop Group, LP v Mich Sporting Goods Distrib, Inc*, 837 NE2d 1058, 1070 (Ind App, 2005). The plain language of the contract must be read in context and, whenever possible, construed so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole. *Tender Loving Care Mgt, Inc*, 14 NE3d at 72 (citation omitted).

Construction of the terms of a written contract is generally a question of law, *Simon Prop*, 837 NE2d at 1070; however, interpretation becomes a question of fact if a contract is ambiguous, *Broadbent v Fifth Third Bank*, 59 NE3d 305, 311 (Ind App, 2016). Indiana courts "may not construe unambiguous language to give it anything other than its clear, obvious meaning, and . . . may not add provisions to a contract that were not placed there by the parties." *Simon Prop*, 837 NE2d at 1070. In determining whether the terms of a contract are ambiguous, words are given their usual and common meaning unless it is clear from the entire contract and subject matter that another meaning was intended. *Whiteco Indus, Inc v Nickolick*, 571 NE2d 1337, 1339-1340 (Ind App, 1991). A word or phrase is ambiguous only if reasonable people could differ as to its meaning. *Simon Prop Group, LP*, 837 NE2d at 1070. But a term is not ambiguous solely because the parties disagree about its meaning. *Id.* (citation omitted). If the contract language is unambiguous, courts may not consider extrinsic evidence to expand, vary, or explain the instrument; instead, the intent of the parties must be determined from the four corners of the contract. *Tender Loving Care Mgt, Inc*, 14 NE3d at 72. If, however, the contract language is ambiguous, extrinsic evidence may be considered "to determine and give effect to the intent of the parties when they entered into the contract." *Id*.

In this case, the dispositive issue was whether the phrase "loan approval," as used in Paragraph F, the provision titled "Time for Obtaining Financing," was ambiguous. The trial court concluded that the phase was ambiguous, essentially because it could have meant either conditional or unconditional loan approval. And because this ambiguity did not become apparent until the parties acted regarding the agreement, the court held that the ambiguity was latent. We disagree.

As stated above, in determining whether terms of a contract are ambiguous words are given their usual and common meaning unless it is clear from the entire contract or subject matter that another meaning was intended. *Whiteco Indus, Inc*, 571 NE2d at 1339-1340. The usual and common understanding of the phrase "loan approval" is that the lender actually agreed to fund the requested loan—without conditions, qualifications, or contingencies—such that the sale and purchase could proceed to completion. "Loan approval" does not mean that the lender is *considering* funding the requested loan and *may* eventually agree to fund the loan. That a lender *may* fund a requested loan is axiomatic—any lender *may* fund any loan because that is the business

-4-

of lenders. Instead, the phrase "loan approval" is usually and commonly understood to denote an unequivocal, unconditional, and definitive affirmative decision by a lender to fund the specific loan at issue.

And, as defendant argues, Indiana law supports this conclusion. In *Blakley v Currence*, 361 NE2d 921 (Ind App, 1977), the plaintiffs entered into a sales agreement with the defendants to sell them an unfinished house. *Id*. at 921. The sale was contingent upon the defendants acquiring loan approval for part of the purchase price. *Id*. Specifically, the contract required the defendants to pay a portion of the sale price in cash "with the remainder of the purchase price being 'subject to loan approval.' " *Id*. at 922. Ultimately, the defendants could not obtain loan approval and the plaintiffs sued, seeking specific performance. *Id*. Defendants argued that the contract was not enforceable because the condition precedent of loan approval was not fulfilled. *Id*. The Indiana Court of Appeals agreed, holding that the clause "subject to loan approval" was "specific and unambiguous." *Id*. at 923. The Court continued that the "conditional clause, 'subject to loan approval,' required the existence of final loan approval before the [defendants'] duty to perform attached." *Id*. And, because "loan approval was not obtained, the agreement of the parties did not become a binding contract." *Id*. Accordingly, the plaintiffs were not entitled to specific performance. *Id*.

Similarly, in this case, the phrase "loan approval" was a condition precedent that was specific and unambiguous and required that plaintiff's lender actually and definitively agreed to fund the requested loan before defendant had a duty to perform. We reject the trial court's conclusion that if the parties had intended that the phrase "loan approval" be limited to only "final loan approval" that "they would and could have used language to that effect." There was no need for the parties to add such a modifier. It is obvious that a lender in the business to fund loans may either grant a request for a loan or deny a request for a loan. There is no need to qualify the type of "loan approval" to make it unequivocal. Again, the usual and common understanding of the phrase "loan approval" is that the lender actually agrees to fund the requested loan—without conditions, qualifications, or contingencies—such that the sale and purchase of the property at issue could proceed to completion. Anything other than a definitive loan approval is essentially irrelevant to the purpose for which the parties entered into the "purchase agreement," i.e., to complete the transaction. And, here, the fact that plaintiff received notice that the lender *may* eventually grant his loan request—after numerous requested documents were received, considered, and deemed satisfactory—wholly failed to meet the condition precedent of obtaining loan approval by the June 9 deadline.

We also disagree with the trial court's rationale that the financing provision, Paragraph F, would not be in harmony with the closing provision, Paragraph G, unless the phrase "loan approval" could be construed as permitting "conditional loan approval" to satisfy the financing condition precedent. The trial court noted that "if 'loan approval' in Paragraph F was intended to be a 'final loan approval' by June 9th, as [d]efendant suggests, there would be no reasonable basis to require the contingency for closing in Paragraph G, allowing 'on or before June 30, 2020, or within 5 days after Lender Approval, whichever is later.' " The court noted that "there would be no need for the alternative, movable closing date, if June 9th was intended to represent 'final loan approval' where the parties were clear to close with respect to the financing." But the trial court failed to consider the fact that Paragraph F states that the time limit of 21 days for loan approval could be extended by the parties if "mutually agreed to in writing." Although an extension did not

happen here, the contract allowed for that possibility which necessarily means that there was a reasonable basis to require the contingency for closing in Paragraph G. In other words, if the time for loan approval was not extended, then the closing would have to occur by June 30. But if the time for loan approval was extended by the parties in writing beyond the June 9 deadline, then it is possible that June 30 would be before the "5 days after Lender Approval," in which case the latter date would control. For example, if the parties had extended the loan approval date to June 29, and lender approval was received on June 29, the parties could close within 5 days after that approval, which would be after June 30. Accordingly, the financing and closing provisions are in harmony when the phrase "loan approval" is construed to mean that the lender actually and conclusively agreed to fund the requested loan such that the sale and purchase of the property at issue could proceed to completion.

In conclusion, the trial court erroneously denied defendant's motion for a directed verdict because the purchase agreement unambiguously required plaintiff to obtain actual and definitive loan approval by June 9, 2020, and the evidence established that plaintiff only received conditional loan approval by that date. Plaintiff essentially obtained a "maybe" from the lender—maybe they would fund the loan and maybe they would not fund the loan. Therefore, the condition precedent of loan approval was not fulfilled and the contract was not enforceable; thus, plaintiff was not entitled to specific performance. We reverse the trial court's order concluding that plaintiff satisfied the condition precedent, vacate the trial court's judgment granting plaintiff specific performance of the purchase agreement, and remand for entry of judgment of no cause of action in defendant's favor.

## B. RESCISSION

Defendant next argues that the trial court erroneously applied a rescission standard to an unsatisfied condition precedent and misconstrued the time-is-of-the-essence provision. We agree.

Under Indiana law, questions of law, including the interpretation and construction of contract provisions, are reviewed de novo. *B&R Oil Co, Inc*, 77 NE3d at 827. As explained in *Van Bibber Homes Sales v Marlow*, 778 NE2d 852, 857-858 (Ind App, 2002):

> Rescission of a contract is defined as "the annulling, abrogating, or unmaking of a contract." *Yates–Cobb v Hays*, 681 NE2d 729, 733 (Ind App, 1997) (citations omitted). "The remedy of contract rescission functions to restore the parties to their precontract position, that is, the status quo." *AJ's Auto Sales, Inc v Freet*, 725 NE2d 955, 967-968 (Ind App, 2000).

However, the court cautioned that rescission is not an automatically available remedy, but if the breach of contract is "a material one which goes to the heart of the contract, rescission may be the proper remedy." *Id*. at 858 (quotation marks and citation omitted).

Indiana courts have consistently recognized that an express condition must be fulfilled or no liability can arise on the promise that the condition qualified. *McGraw v Marchioli*, 812 NE2d 1154, 1157 (Ind App, 2004). If a condition does not occur, performance of a duty subject to that condition cannot become due. *Id*. In other words, a "condition precedent is either a condition which must be performed before the agreement of the parties becomes binding, or a condition

-6-

which must be fulfilled before the duty to perform an existing contract arises." *Barrington Mgt Co, Inc*, 695 NE2d at 141.

In this case, plaintiff did not fulfill the condition precedent of obtaining loan approval by the required June 9, 2020 deadline. Therefore, the purchase agreement did not become binding on defendant and defendant had no duty to perform, i.e., to sell the property to plaintiff. However, the trial court held that even if plaintiff had failed to meet the deadline, defendant was still obligated to perform because, contrary to the time-is-of-the-essence provision in the parties' contract, the deadline was not a material term. Thus, the trial court concluded, defendant had no right to rescind the contract. However, when a condition precedent is not satisfied, the agreement between the parties is not binding and a party cannot enforce a contract obligation. *Id.* In other words, defendant did not have to "rescind" the contract because there was no binding contract to rescind. But in any case, when an agreement makes time of the essence and the time for performance is specified, strict performance is necessary unless waived and, if not tendered, the agreement becomes legally defunct. *Smith v Potter*, 652 NE2d 538, 542 (Ind App, 1995). There was no waiver of the June 9, 2020 deadline in this case, and thus, the agreement became legally defunct after the deadline passed. Thus, the trial court's decision was erroneous.

## C. ANTICIPATORY REPUDIATION

Defendant also argues that the trial court erred by finding that he anticipatorily repudiated the purchase agreement. We agree. To repudiate a contract is to reject a contract without legal justification. *Cheng Song v Iatarola*, 120 NE3d 1110, 1115-1116 (Ind App, 2019). In this case, after plaintiff failed to obtain the required loan approval by the June 9, 2020 deadline, defendant notified plaintiff that he was terminating the agreement—as he was permitted to do under the terms of their agreement which stated: "If an approval is not obtained within the time specified above, this Agreement may terminate unless an extension of time for this purpose is mutually agreed to in writing." Again, the condition precedent of loan approval was not satisfied and the parties did not mutually agree in writing to extend the time for approval; therefore, defendant terminated the agreement *with* legal justification. See *id.* Accordingly, the trial court erred by finding that defendant anticipatorily repudiated the purchase agreement.

## D. EXCLUDED TESTIMONY

Defendant next argues that the trial court abused its discretion when it precluded his testimony regarding his intent behind the purchase agreement's time provisions. In light of our conclusion that the purchase agreement was not ambiguous, we need not address this issue. See *Tender Loving Care Mgt*, 14 NE3d at 72.

## E. ATTORNEY FEES AND COSTS

Lastly, defendant argues that because plaintiff was not entitled to specific performance, plaintiff did not prevail on his claim and the judgment awarding plaintiff attorney fees and costs as a prevailing party must be vacated. We agree.

"Indiana follows the 'American Rule' which requires each party to litigation to pay their own attorney's fees." *Willie's Const Co, Inc v Baker*, 596 NE2d 958, 963 (Ind App, 1992). "Attorney's fees are not allowable in the absence of a statute, or in the absence of an agreement or

stipulation between the parties." *Id.* "A contract that allows for the recovery of attorney's fees will be enforced according to its terms unless the contract is contrary to law or public policy." *Id.* Here, the purchase agreement stated that the prevailing party in any legal or equitable proceeding against the other party regarding this agreement or transaction shall be entitled to recover court costs and reasonable attorney fees from the nonprevailing party.

Because we vacate the trial court's judgment granting plaintiff specific performance, we also vacate the trial court's judgment awarding plaintiff attorney fees and costs as the prevailing party. We note that defendant had prevailed on plaintiff's claim for incidental damages in the trial court. Thus, as the only prevailing party, defendant is entitled to recover court costs and reasonable attorney fees from plaintiff. We remand this matter to the trial court for determination of the amount that defendant is entitled to as the prevailing party.

Reversed, vacated, and remanded. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra